The PRUDENTIAL INSURANCE COMPANY OF AMERICA,
Plaintiff,

v.

Jessica L. SCHMID, and Patricia K. Schmid, Defendants.

No. CIV.A.03–40038–NMG.

United States District Court,
D. Massachusetts.

Sept. 16, 2004.

CaryLouise Belrand, William Bogaert, Wilson, Elger, Moskowitz, Edelman & Dickor, Edward P'Oleary, Fitzhugh, Parker & Alvaro, Boston, MA, for Prudential.

Bonnie E. Marien,Clavdine T. Noftall, Marien & Hodge P.C., Springfield, MA, for Jessica Schmid.

Dorothy Varon, Nancy Frankell Pelcher, Robinson Donovan P.C., Springfield, MA, for Patricia Schmid.

## MEMORANDUM & ORDER

GORTON, District Judge.

On February 24, 2003, Prudential Insurance Company of America ("Prudential") filed a complaint in interpleader against

defendants Jessica L. Schmid ("Jessica") and Patricia K. Schmid ("Patricia"). Prudential claims that it cannot determine with certainty whether Jessica or Patricia is entitled to the proceeds of a life insurance policy of the decedent, Alexander Schmid ("Mr.Schmid"). Pending before the Court are Jessica's motions for summary judgment and to strike Patricia's Response to her Statement of Material Facts. Both motions are opposed.

## I. *Background*

Jessica is the·daughter and Patricia the second wife of the late Mr. Schmid. Mr. Schmid was employed by the Springfield Public School District and was thereby eligible to participate in Member Benefits Group Life Insurance Plan ("the Plan") of the National Education Association ("NEA"), insured by Prudential. Mr. Schmid and his first wife, Jessica's mother, were divorced in 1989 and as part of the divorce he promised to make Jessica the beneficiary of his life insurance policy at least until her 21st birthday on November 14, 2001.

Mr. Schmid enrolled in the Plan, selected basic NEA Term Life coverage and, on a form dated February 13, 1992, designated Jessica as beneficiary. Mr. Schmid married Patricia in August, 1998. Thereafter, Mr. Schmid purchased additional insurance through NEA, including Accidental Death and Dismemberment ("AD & D") coverage and designated Patricia as his sole beneficiary for that coverage.

In October, 2001, Mr. Schmid requested a change of beneficiary form from NEA as well as information with respect to the named beneficiary of his term life insurance. Patricia contends that she heard Mr. Schmid say, while on the phone with NEA, that he intended to make her the beneficiary of the term life insurance. On or about November 7, 2001, Mr. Schmid received correspondence dated November 5, 2001 from NEA customer service representative, Cristina Bradford ("Ms.Bradford"), erroneously identifying Patricia, rather than Jessica, as the beneficiary of his term life insurance policy. As explained in Prudential's complaint, Ms. Bradford presumably sent information from the most recent insurance application on file relative to the AD & D coverage rather than the term life insurance coverage. The correspondence also included a change of beneficiary form with instructions that to effect a change Mr. Schmid should complete it, have it witnessed by someone other than the proposed new beneficiary and return it to NEA.

Mr. Schmid died on October 7, 2002. At the time of his death, he was insured for $80,000 under the term life policy and $1,000 under the unexplained "ABC Life coverage provisions" (collectively, "the Proceeds"). Patricia alleges that Mr. Schmid intended to change the beneficiary of his term life insurance policy from Jessica to Patricia and was only prevented from doing so by Ms. Bradford's transmission error. At present, Jessica remains as the listed beneficiary.

On November 8, 2002, Patricia's attorney contacted NEA and stated that her client was the rightful beneficiary of the Proceeds based upon the November 5, 2001 correspondence from Ms. Bradford. The legal basis for Patricia's claim was identified as promissory estoppel and misrepresentation. NEA forwarded Patricia's information to Prudential, who provided the parties with an opportunity for resolution before filing this action in interpleader. After commencing this action and pursuant to an order of the Court, Prudential paid the Proceeds into Court and has been discharged from the proceedings.

On October 23, 2003, Jessica filed the instant motion for summary judgment.

Patricia opposed the motion and filed a response to Jessica's Statement of Material Facts. Jessica subsequently filed the pending motion to strike Patricia's response and opposition to summary judgment, which Patricia also opposes.

## II. *Discussion*

### A. *The Summary Judgment Motion*

#### 1. *Standard of Review*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993).

If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

#### 2. *Jessica's Motion for Summary Judgment*

Jessica seeks summary judgment with respect to the ownership of the Proceeds, arguing: 1) she is the named beneficiary of Mr. Schmid's term life insurance, 2) Patricia lacks standing to bring a claim under the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") and 3) Mr. Schmid did not substantially comply with the requirements for changing the beneficiary designation on his Life Insurance Plan.

It is uncontested that Jessica is the named beneficiary of Mr. Schmid's term life insurance. That fact alone is, however, an insufficient basis for granting summary judgment in her favor. Even if Jessica had developed the argument beyond the conclusory statement in her introduction, federal law does not limit inquiry in these matters to the four corners of an insurance policy. Although ERISA requires that the fiduciary shall make payments to a beneficiary "designated by a participant, or by the terms of [the] plan", 29 U.S.C. § 1002(8), it is silent as to how to select a beneficiary from among disputing claimants and the Court must look beyond the named beneficiary to determine which claimant should prevail. Jessica does not have the right to demand strict compliance with the policy and Prudential, as the only remaining party to the contract, effectively waived the right to insist upon strict compliance by becoming a stakeholder in interpleader. *Pan American Life Insurance Co. v. De Cobian Alvarez*, 160 F.Supp. 292, 295 (D.P.R.1958) (de-

fendant has no standing to challenge a change of beneficiary when the insurer has waived its right to do so).

Jessica next argues that Patricia lacks standing to bring a claim under ERISA because she is neither participant, beneficiary or fiduciary pursuant to its relevant provisions. Although it is likely that Patricia does not meet the standard for a beneficiary under ERISA, the issue of standing is irrelevant in this case. As Patricia argues in her opposition, she did not put the ERISA claims before the Court. Prudential filed the instant action in interpleader, and as a defendant in this case, Patricia does not need to establish standing. *See Metropolitan Life Insurance Co. v. Flinkstrom*, 303 F.Supp.2d 34, 38 (D.Mass.2004)(standing not an issue); *Pan American Life Insurance Co.* at 293.

Jessica's final and most substantive argument is that even if Patricia has standing to pursue her claim, Mr. Schmid did not substantially comply with the requirements of the Plan to effect a change of beneficiary. Although the Plan is an employee welfare benefit plan typically regulated by ERISA, the statute contains no specific provisions for the settlement of disputes between claimants. Jessica bases her argument on the common law doctrine which requires that any attempted change of beneficiary meet a standard of substantial compliance with the insurer's policy for such changes. Patricia responds that Mr. Schmid did substantially comply with the provision for changing beneficiaries by calling the insurance company because, having been subsequently misinformed that Patricia was already the listed beneficiary, no reason existed for him to complete the change of beneficiary form.

Before addressing the issue of substantial compliance, however, the Court must deal with the threshold question of whether ERISA preempts the state com-

mon law doctrine of substantial compliance and if so, what is the controlling federal common law. There is no precedent directly addressing whether ERISA preempts the state common law doctrine of substantial compliance but the related question of whether ERISA preempts state statutory law concerning policy beneficiaries was addressed in *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). In that case, the Supreme Court held that a Washington State statute relating to beneficiary designation after a divorce was preempted by ERISA. Although ERISA contains no express provisions concerning the effect of a divorce, the Court held that, because the state statute pertained to the payment of benefits, it impermissibly interfered with a "central matter of plan administration." *Egelhoff*, at 160, 121 S.Ct. 1322. The *Egelhoff* opinion, therefore, supports the notion that, where the cause of action concerns beneficiaries of a plan covered by ERISA, state law is preempted.

In *Catholic Charities of Maine v. City of Portland*, 304 F.Supp.2d 77 (D.Me.2004), the only district court within the First Circuit Court to interpret *Egelhoff*'s provisions on preemption, held that the City of Portland could not limit payment of certain city funds to those employers who provide benefits to domestic partners. Citing *Egelhoff*, the court concluded that, inasmuch as the City Ordinance was "concerned with the...administration of employee benefit plans, an area of core ERISA concern," it was preempted by ERISA.

While the First Circuit Court of Appeals has not otherwise addressed the question at hand, the Fourth and Seventh Circuits have specifically examined ERISA's effect upon the state common law doctrine of substantial compliance and concluded that ERISA preempts state law in this area.

*See Phoenix Mutual Life Insurance Co. v. Adams*, 30 F.3d 554 (4th Cir.1994); *Metropolitan Life Insurance Co. v. Johnson*, 297 F.3d 558 (7th Cir.2002). The Sixth Circuit has gone a step farther, suggesting that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Tinsley v. General Motors Corporation*, 227 F.3d 700, 703 (6th Cir.2000).

Because preemption of state law is in accordance with the Supreme Court's decision in *Egelhoff,* and because the only inconsistent case law predates that decision, this Court concludes that state common law doctrine of substantial compliance is preempted by ERISA. When ERISA fails to address an issue and the state law relating to that issue has been preempted, the Supreme Court has authorized federal courts to develop federal common law under ERISA-regulated plans. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

■ Current federal common law on this issue is best embodied in the two-part test for substantial compliance established by the Fourth Circuit in *Phoenix Mutual Life Insurace Co. v. Adams,* 30 F.3d. 554 (4th Cir.1994), and adopted by the Seventh Circuit. According to the *Phoenix* test, the insured must have 1) evidenced intent to make the change and 2) attempted to effectuate the change by undertaking positive action which is, for all practical purposes, similar to the action required by the change of beneficiary provisions of the policy. In the absence of any existing First Circuit law, this Court will adopt that test.

■ The first element of substantial compliance, i.e. that the insured must have evidenced intent to make a change, may be satisfied by evidence that the decedent expressly told another of his intent to change the beneficiary on the insurance policy. In *Life Insurance Co. of N. America v. Leeson,* 2002 WL 483563, *1, 2002

U.S. Dist LEXIS 18530, *3 (S.D.Ohio 2002), the district court found sufficient evidence of intent where the decedent had told his wife, mother and sister that he planned to make his new wife the beneficiary. Similarly, in *Connecticut General Life v. Thomas,* 910 F.Supp. 297, 299 (N.D.Tex.1995), the district Court suggests that oral modification to the insurer of plans to make a specific change would adequately evince the decedent's intent. In this case, there is colorable evidence that Mr. Schmid intended to make Patricia his beneficiary. She states in her affidavit (and for the purposes of this motion, the Court must accept) that Mr. Schmid expressed his intent to make her the beneficiary during a phone conversation with the insurer. The issue involves a genuine issue of material fact.

Having acknowledged that there is sufficient evidence of intent for the purpose of this summary judgment motion, the Court must now determine whether there is a genuine issue of material fact with respect to the second *Phoenix* factor for substantial compliance, i.e. whether Mr. Schmid attempted to effectuate a change of beneficiary by undertaking positive steps to satisfy the policy requirements. Here, Patricia comes up short because, even if the Court construes all reasonable inferences in her favor, Mr. Schmid's actions were insufficient to accomplish a change of beneficiary and, therefore, Jessica is entitled to summary judgment in her favor.

Although neither party included a copy of the insurance policy with her memo, it is clear from Ms. Bradford's letter that in order to change his beneficiary, Mr. Schmid, at the very least, had to complete a Change of Beneficiary Form, have it witnessed by someone other than the proposed new beneficiary and return it to the insurance company. He did none of those things. Patricia argues that had Mr.

Schmid not been misinformed that she was already the beneficiary he would have changed the designation of his the beneficiary. She claims, therefore, that Mr. Schmid's telephone conversation with a company representative should suffice as a good-faith attempt to effect a change of beneficiary. Her position is, however, insupportable.

There are parallel cases that prove instructive in this matter. In *American International Life Assurance Co. of New York v. Vazquez,* 2003 WL 548738, 2003 U.S. Dist LEXIS 2675 (S.D.N.Y.2003), the decedent did nothing except express an intent to make an unspecified change and to obtain the change of beneficiary forms.

The Court held that this was insufficient to effectuate a change of beneficiary. More a propose is *Aetna Life Ins. Co. v. Weatherford,* 924 F.2d 1057, 1991 WL 11611 (6th Cir.1991), where the decedent completed and signed a change of beneficiary form but never mailed it. The completion of the form was held to be merely an "unexecuted intention" and did not meet the standard of substantial compliance. *Aetna Life Ins. Co.,* 1991 WL 11611 at *5. In this case, it is clear that the telephone conversation does not suffice as a positive act to accomplish Mr. Schmid's intent. He did not take the necessary steps to change his beneficiary. There is simply no genuine issue of material fact to decide and Jessica's motion for summary judgment will be allowed.

## B. *The Motion to Strike*

Jessica has filed a motion to strike portions of the statement of material facts and the affidavit Patricia filed in support of her opposition to Patricia's motion for summary judgment ("the Affidavit"). Jessica argues that a number of statements contained in the Affidavit are inadmissible hearsay and that other statements are conclusions of law rather than Patricia's statements of personal knowledge. Patricia opposes the motion on the grounds that the statements at issue are not hearsay because they are meant to show Patrica's state of mind pursuant to Fed.R.Evid. 803, as well as the state of mind of her deceased husband, pursuant to Fed.R.Evid. 804(b)(5). She argues that the other statements are not conclusions of law but merely recitations of the facts.

Without addressing the details, it is clear to this Court that the subject statements are not inadmissible hearsay and are admissible for the purpose of the pending motion. Patricia's demand for costs in connection with her motion will, however, be denied.

## ORDER

For the reasons stated in the foregoing memorandum, the motion of Jessica Schmid for summary judgment (Docket No. 9) is ALLOWED and her motion to strike (Docket No. 22) is DENIED.

**So ordered.**