# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3614

_____

| | | |
|---|---|---|
| Alliant Techsystems, Inc., as sponsor | * | |
| and Administrator of the Alliant | * | |
| Techsystems Inc. 401(k) Plan, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Tracy C. Marks, | * | District Court for the |
| | * | District of Minnesota. |
| Defendant - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Irwin Bank & Trust, as Guardian of the | * | |
| Estate of Rose A. Marier, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: May 19, 2006
Filed: October 19, 2006

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and COLLOTON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Tracy Marks appeals from an order of the district court denying her the benefits from a 401(k) Plan of Alliant Techsystems, Inc., which her former stepfather James

Marier had maintained. Tracy and James's mother, Rose Marier, made competing claims for the benefits following James's death. The Plan initially determined that Tracy was entitled to the benefits, but, after Rose appealed, it filed this interpleader action to determine the correct beneficiary. The district court granted summary judgment and awarded the proceeds of the Plan to Rose. Tracy appeals the order of summary judgment, and we reverse.

I.

We recite the facts in the light most favorable to Tracy in this review of the order of summary judgment entered against her. Johnson v. AT&T Corp., 422 F.3d 756, 760 (8th Cir. 2005). James Marier was married to Kathleen Marier for twelve years and developed a close relationship to Kathleen's adult daughter, Tracy Marks, both during the marriage and after the divorce. James and Tracy treated each other as father and daughter, as he had no children and she had no father. Tracy's children called James "Grandpa Jim," and he spent holidays with Kathleen and Tracy's family. Tracy had often accompanied James to medical appointments when his health declined, and she watched over his care. James executed a power of attorney in favor of Tracy in 2001, and he named her as personal representative of his will in 2002 and 2003.

James cared for his widowed mother, Rose, by looking after her financial affairs and making periodic trips from his home in Minnesota to her home in Pittsburgh to check on her. Rose has been adjudicated incapacitated, and the Irwin Bank has been appointed guardian of her estate. The record suggests that she has considerable assets. James also had three siblings, but he was not close to them. Indeed, the record suggests that there was significant tension between Tracy and James's siblings. When James became ill, Kathleen and Tracy notified his brother and sisters. They declined to visit at that time, but the sisters did come to Minnesota in November 2002 at James's request to discuss his financial affairs. Before this meeting, James had

decided to remove his siblings from his will and to name Tracy as his sole residuary beneficiary. Stating that he was "not unmindful of" Rose and his siblings, he executed a will to that effect in September 2002. At the family meeting in November, James's sisters learned that he had named Tracy as the beneficiary of his estate, and the meeting ended badly. Afterwards, James's brother-in-law wrote a letter to James's attorney suggesting that James should revoke Tracy's general power of attorney and make sure any inheritance he might receive from Rose would stay in the Marier family. To placate his siblings' concerns, James executed a new will in January 2003 that increased the specific bequests to his nieces and nephews.

For most of his career, James worked as an engineer at Honeywell. Although the record does not indicate how the corporate change occurred, James later became employed by Alliant Techsystems, Inc., without changing jobs. James participated in Alliant's 401(k) Plan, a pre-tax retirement savings plan governed by ERISA. Alliant is both the sponsor and the Administrator of the Plan. The Plan documents gave James, as a participant, the specific right to designate a beneficiary and the exclusive right to change or revoke earlier beneficiary designations. The Plan provides that a beneficiary designation becomes effective when "executed by the Participant and received by the [Plan]." The Plan specifies that it will give effect to any designation of a nonspouse beneficiary by name that is accompanied by a description of the beneficiary's relationship to the participant, even if that relationship does not exist at the time of execution or distribution. Fidelity Investments performed record-keeping functions for Alliant's Plan.

In 1996, James completed a beneficiary designation form naming his then-wife Kathleen as the primary beneficiary of his 401(k) Plan and his stepdaughter Tracy as his secondary beneficiary, listing her relationship as "step-daughter." After James and Kathleen divorced in 2000, James submitted a new beneficiary designation form designating his mother Rose as the primary beneficiary and again listing Tracy as his secondary beneficiary, describing her relationship as "former stepdaughter." On

September 21, 2002, James submitted a third beneficiary designation form, this time listing Tracy as the primary beneficiary. James did not name a secondary beneficiary. He completed all parts of the third form except the blank for the beneficiary's relationship to him. It appeared that he may have written something in that space and then whited it out before submitting it.

In October 2002, James had surgery to remove a brain tumor. On October 23 while James was still hospitalized, Fidelity returned the third beneficiary designation form to him with a corrections checklist instructing him to complete the blank for Tracy's relationship. Fidelity's instructions indicated that "white-out is not accepted to make corrections." An internal-use notation on the checklist classified the form as "NIGO," or not in good order. Fidelity never received a corrected beneficiary form from James, but, on December 26, 2002, he called the Plan's customer service line to find out who was recorded as his beneficiary. Fidelity operates the service center on the Plan's behalf. After authenticating James's identity, the Fidelity representative looked at a scanned image of the September 2002 form and told him that Tracy was listed as his only beneficiary. James confirmed that that was his desire. In a November 2002 letter to James concerning his estate planning, James's attorney recited the current state of his planning documents which reflected the fact that Tracy would be the only beneficiary of the 401(k) account. Although James's sisters questioned his capacity to have made changes to his estate plans in September (near the time of his last beneficiary designation), James's treating physician had found him to be "completely neurologically normal" and "fully competent" as of his examination on December 12, 2002.

James died on September 25, 2003. Looking to the 2000 beneficiary designation form, Fidelity initially notified Rose that she was the beneficiary of the 401(k) account. Fidelity later froze the account when Tracy claimed that she was the proper beneficiary according to James's 2002 beneficiary designation form. The Plan provides that an Administrative Committee made up of Alliant employees, appointed

by Alliant's Pension and Retirement Committee, is vested with the responsibility to determine competing claims for benefits under the Plan. The Pension and Retirement Committee has the ultimate and sole discretion concerning entitlement to benefits.

In light of Rose and Tracy's competing claims for the benefits of James's account, Alliant was called upon to decide the matter. Alliant's Administrative Committee issued an "initial determination" that, "based upon the terms of the Plan," the 2002 beneficiary designation naming Tracy as sole beneficiary "is substantially complete in material respects, and will be enforced." Alliant reasoned that James's failure to fill in the relationship line was "not a material omission" and that the Plan was "on notice" of James's relationship to Tracy from the two earlier beneficiary designations. It further stated that the Plan did not require that a beneficiary be related to the participant, explaining that the relationship information is just a useful device for helping to locate the beneficiary if needed. Alliant also noted that, when Fidelity returned the beneficiary designation form to James, its letter did not state that his designation of Tracy had been rejected or that his failure to fill in the relationship blank invalidated the designation. It cited the telephone communication between James and the Plan representative in December 2002 as confirmation of his intent to name Tracy as the primary beneficiary, and it speculated that he may have omitted the relationship information because he was uncertain how to describe it following his divorce from Kathleen. In addition to providing Rose and Tracy notice of their ERISA appeal rights in its initial determination, Alliant reserved its right to interplead the claims to James's account.

Irwin Bank and Trust, as guardian of Rose's estate, appealed this initial determination to Alliant's Pension and Retirement Administrative Committee, claiming that the 2002 designation did not actually or substantially comply with Plan requirements, the substantial compliance doctrine was no basis for enforcing the form in this jurisdiction, James lacked capacity when he executed the form, and the form was the product of undue influence by Tracy. Tracy filed a response with affidavits

contesting these allegations. Believing litigation was inevitable, the Committee chose to file this interpleader action rather than rule on the appeal. The district court considered the case on motions for summary judgment filed by both parties. It denied Tracy's motion for summary judgment and granted the Bank's motion on behalf of Rose's estate after finding that James's final beneficiary designation in Tracy's favor was invalid.

We review de novo the district court's decision granting summary judgment to the Bank on behalf of Rose, viewing the evidence in the light most favorable to Tracy. Johnson, 422 F.3d at 760.

II.

Tracy first argues that the district court applied the incorrect standard of review to Alliant's initial determination in her favor. The district court conducted a de novo review of Alliant's initial determination that the 2002 beneficiary designation was enforceable in favor of Tracy. We review de novo the district court's determination of the proper standard of review. Seman v. FMC Corp. Ret. Plan for Hourly Employees, 334 F.3d 728, 732 (8th Cir. 2003). We conclude that Alliant's initial determination was entitled to deferential review under the abuse of discretion standard.

Where an ERISA plan grants its administrator discretion to decide questions of eligibility for benefits or construe plan terms, judicial review of the administrator's determinations generally is limited to the abuse of discretion standard. Seman, 334 F.3d at 732-33; see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Judicial review is de novo, however, where an administrator did not exercise the discretion granted to it, Nat'l Auto. Dealers & Assocs. Ret. Trust v. Arbeitman, 89 F.3d 496, 498 (8th Cir. 1996), and for issues that were within the administrator's

discretion but on which the administrator failed to render a decision.  Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1328 (8th Cir. 1995).

In this case, the Plan vested Alliant's Pension and Retirement Committee with sole discretion to construe the Plan Statement and to determine "all factual and legal questions" under the Plan, including beneficiaries' entitlement to account proceeds. The Committee, acting through its Administrative Committee, exercised that discretion when it made the initial determination "based upon the terms of the Plan" that James's 2002 beneficiary designation was valid and would be enforced even though James failed to list Tracy's relationship in the blank provided.  The district court, however, concluded that Alliant's decision to file an interpleader action rather than rule on Rose's appeal "effectively negates any exercise of" its discretionary authority, and thus it reviewed Alliant's initial determination de novo.

This Circuit has not had occasion to resolve the issue of which standard of review applies where an ERISA plan administrator makes an initial determination of competing claims but later elects to file an interpleader action rather than rule on the disappointed claimant's appeal.  The Bank argues that Arbeitman controls this question.  In Arbeitman, however, the plan administrator filed an interpleader action before rendering any determination on entitlement to benefits.  89 F.3d at 498. Because the administrator failed to exercise any of the discretion granted to it by the plan, we had nothing to defer to, leaving the de novo standard as the only applicable standard of review. See id.  In this case, Alliant did exercise its discretion in rendering an initial determination that, "based upon the terms of the Plan," the 2002 designation was enforceable.  Unlike the administrator in Arbeitman, Alliant has exercised authority that we can review; the issue is the appropriate amount of deference to give to Alliant's interpretation of its Plan.

The Bank argues that we owe no deference to the Plan Administrator's initial determination because an interpleader action effectively removes the administrator

from the case and it has no further stake in the matters being litigated. This argument overlooks the Administrator's interest in interpreting its own Plan terms; we grant deference to that interpretation because we have a "general hesitancy to interfere with the administration of a benefits plan." Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998). Alliant, as Administrator, acted to interpret its Plan in its initial determination, but, when the Bank challenged that determination, it stopped short of deciding the issues of undue influence, incapacity, and substantial compliance. We reject the Bank's characterization of this interpleader as completely removing the Administrator from the case. Rather, the Administrator viewed the interpleader action as a way to minimize costs to the Plan where litigation between the competing claimants seemed inevitable and the new issues the Bank raised were outside the Administrator's area of expertise. Alliant's Pension and Retirement Committee felt that a court was in a better position to decide the factual issues regarding incapacity and undue influence and the potential legal issue regarding substantial compliance, and reasonably concluded that it was in the Plan's best interest to invoke the interpleader device at that point. Where an ERISA plan gives a plan administrator discretion to decide certain issues and the administrator or fiduciary fails to do so, a reviewing court will decide those issues de novo. Mansker, 54 F.3d at 1328. This principle does not preclude judicial deference toward issues the administrator did decide before filing its interpleader action.

Tracy cites Seman to argue that, under this Circuit's law, an ERISA administrator's failure to act on an appeal does not raise the standard of review to de novo. Her citation is incomplete. In Seman, we held that an administrator's failure to act on an appeal does raise the standard of review from abuse of discretion to de novo "if the review panel's inaction raises serious doubts about the administrator's decision." Seman, 334 F.3d at 733; see also McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1031 (8th Cir. 2000). Serious doubts can be raised by a procedural irregularity that suggests the initial determination was "the product of an arbitrary

decision or the plan administrator's whim" rather than an exercise of judgment. McGarrah, 234 F.3d at 1031.

The Bank argues that Alliant's conduct raises serious doubts, pointing to its inconsistent conclusions about who was the proper beneficiary and the fact that this matter prompted it to review its method for processing beneficiary designations. Keeping in mind that the Bank has a "rigorous" standard to meet, McGarrah, 234 F.3d at 1031, we conclude that Alliant's decision-making process does not contain the type of procedural irregularities that raise serious doubts about its initial determination that the 2002 beneficiary designation in favor of Tracy was enforceable under the Plan. While Fidelity's actions in granting the account to Rose then freezing it when Tracy made her claim indicate some confusion about who was entitled to the account just after James's death, they do not suggest arbitrary decision-making, especially in light of Alliant's efforts to investigate James's communications with the Plan to determine the proper beneficiary. The Administrator invited the competing claimants to provide information, and it conducted an investigation into the relevant circumstances before rendering its initial determination. The Bank argues that Alliant had no input from Rose when it made its initial determination that Tracy was the designated beneficiary of the account. If that is the case, it is because the Bank failed to articulate its position. On February 9, 2004, Alliant sent a letter to the Bank inviting it "to submit anything to assist [us]" before "we . . . issue an initial determination of the beneficiary of the account." Alliant made its determination the following month and memorialized it in a written decision that was "based upon the terms of the Plan." In light of the steps Alliant took to determine the proper beneficiary, none of the Bank's arguments raise serious doubts about "the integrity of [Alliant's] decision making process." McGarrah, 234 F.3d at 1031.

In its appeal to the Committee on Rose's behalf, the Bank argued and produced some evidence that James lacked capacity and labored under undue influence from Tracy when he executed the 2002 beneficiary designation. In Seman, a plan

administrator's initial denial of benefits was subject to de novo review where the administrator ignored the claimant's appeal even though the claimant had produced additional medical evidence that directly undermined the insufficient proof grounds for the initial denial of benefits. 334 F.3d at 733. Unlike the additional evidence in Seman, however, the Bank's evidence does not undermine the basis for Alliant's initial determination because it relates to matters outside the terms of the Plan. Alliant determined that Tracy, not Rose, was entitled to the account based on its conclusion that a description of Tracy's relationship to James was "not essential" to make the 2002 designation effective, a conclusion that rests on Alliant's interpretation of its own Plan terms. While the Bank's allegations regarding incapacity and undue influence, if true, might eliminate Tracy's ultimate entitlement to the funds, they do not affect the validity of Alliant's interpretation of its Plan terms. Accordingly, Alliant's abstention from considering these new issues on appeal is not the type of inaction that so impugns the integrity of its initial decision-making process as to meet the rigorous standard of raising serious doubts about the initial determination.[1]

_____

[1]Similarly, the Bank's legal argument that this jurisdiction has not recognized the substantial compliance doctrine has no bearing on the integrity of Alliant's decision. Substantial compliance is a state law doctrine courts use "to give effect to an insured's intent to comply" with a plan's change of beneficiary provisions where the insured's intent is evident but the designation otherwise would be unenforceable because it did not actually comply with plan requirements. Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 565 (4th Cir. 1994); see also Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1052 (10th Cir. 1992) (characterizing substantial compliance as a doctrine "to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract"). In this case, Alliant determined that, "based upon the terms of the Plan," James's 2002 beneficiary designation was enforceable because the missing relationship information was "not a material omission" under the Plan. Unless we conclude that the designation was not valid under any reasonable interpretation of Plan terms, however, Alliant's determination that it was valid under the Plan eliminates our need to resort to that doctrine or decide the question of its availability in this jurisdiction.

-10-

Thus, we conclude that Alliant's initial determination that James's 2002 beneficiary designation was enforceable under the Plan is entitled to deference under the abuse of discretion standard.

### III.

Having concluded that the district court should have reviewed the Administrator's initial determination for abuse of discretion, now we apply that deferential standard to the initial determination. The record reveals that Alliant did not abuse its discretion in finding that James's 2002 beneficiary designation was enforceable under its Plan terms even though the change of beneficiary form did not describe Tracy's relationship to James.

Under the abuse of discretion standard, we uphold an administrator's determination as long as it is reasonable. Norris v. Citibank, N.A. Disability Plan (501), 308 F.3d 880, 883 (8th Cir. 2002). We examine five issues to determine whether an administrator's interpretation of plan terms is reasonable: (1) whether the administrator's interpretation is consistent with the plan's goals; (2) whether the interpretation renders any of the plan's language internally inconsistent or meaningless; (3) whether the interpretation conflicts with ERISA's substantive or procedural requirements; (4) whether the administrator has consistently interpreted the terms at issue; and (5) whether the interpretation is contrary to the plan's clear language. Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992). We may consider these issues in any order. Id.

Exercising the discretion granted to it by the Plan, Alliant determined that the missing relationship information in James's 2002 beneficiary designation form was not a "material omission" and that his designation of Tracy as primary beneficiary was valid "based upon the terms of the Plan." In light of the five issues we must consider, we conclude that the Administrator's interpretation of the Plan terms is reasonable.

-11-

First, Alliant's determination that the 2002 designation should be enforced despite the missing relationship information is consistent with the Plan goal of distributing participants' accounts in accordance with their wishes. The Plan gives participants the exclusive right to designate and change beneficiaries. Alliant determined that the Plan documents do not contain a directive that relationship information must be provided in order to make a beneficiary designation effective. James had a telephone conversation with a Plan representative after he had submitted his last beneficiary designation form. In that conversation, James confirmed that Tracy was listed as the sole beneficiary of his 401(k) Plan benefits. This information is consistent with James's latest and last form, and giving effect to that form is consistent with the Plan goal of effectuating James's intent.

Next, Alliant's interpretation is consistent with the Plan's clear language. The Plan provides that beneficiary designations are effective when executed by the participant and received by the Plan, so long as the Plan receives the designation within the participant's lifetime. The Administrator's determination to give effect to James's 2002 designation is consistent with these requirements. Similarly, the Summary Plan Description instructs participants that they can change their beneficiaries "by completing a new Beneficiary Designation Form and sending it to" Fidelity. The only requirement that the Summary Plan Description notes is that "for a Beneficiary Designation Form to be effective, [Fidelity] must receive it while you are still living." Giving effect to the form does not contradict the Plan's plain language, which requires only that the form be "received," not accepted.[2] Consistent

_____

[2]Plan paragraph 7.4.1, "Right to Designate," states:

      Each Participant may designate, upon forms to be furnished by and filed with the PRC or its designee, one or more primary Beneficiaries or alternative Beneficiaries to receive all or a specified part of the Participant's Vested Total Account in the event of the Participant's death. The Participant may change or revoke any such designation from

with these terms, when Fidelity returned the form to James with instructions to provide the missing relationship information, its letter did not indicate that his beneficiary designation was invalid; the "NIGO" (not in good order) notation is in a small box marked "Internal Use Only." See Harpole v. Entergy Ark., Inc., 197 F. Supp. 2d 1152, 1158 (E.D. Ark. 2002) (finding the administrator's decision to enforce a beneficiary designation with the beneficiary's social security number missing was "perfectly prudent and reasonable" and not contrary to plan's clear language where notification to participant did not indicate that the form was "completely ineffective until the data was received" and plan documents did not require the beneficiary's social security number).

Likewise, Alliant's interpretation does not render other portions of the Plan inconsistent or meaningless; nor does the Bank point out any conflict between Alliant's other interpretations of its Plan and its interpretation in this matter. Alliant determined that the 2002 designation was enforceable even though it did not describe Tracy's relationship to James. Nothing in the Plan requires participants to state the nature of their relationship to their beneficiaries. In fact, the Plan specifically validates a designation that erroneously lists a relationship where there is none. The pertinent rule gives effect to the "designation of a nonspouse Beneficiary by name that is accompanied by a relationship to the Participant . . . without regard to whether the relationship to the Participant exists either then or at the Participant's death." Alliant's determination that James validly designated Tracy by name harmonizes well with this provision.

---

time to time without notice to or consent from any Beneficiary or spouse. No such designation, change or revocation shall be effective unless executed by the Participant and received by the PRC or its designee during the Participant's lifetime.

-13-

The Bank relies heavily on the argument that the 2002 designation failed to meet Plan requirements because of the possibility that James used white-out on the relationship blank.[3] The record does not support a finding to this effect, and thus we cannot rely upon it in reviewing a summary judgment. Even if we could be certain that James used white-out in the blank provided for Tracy's relationship to him, we could not conclude that it would be inconsistent with Plan terms for Alliant to give effect to the form. The Plan documents do not prohibit the use of white-out. Moreover, while Alliant and Fidelity created an internal policy of requesting that participants not use white-out on beneficiary designation forms, the Plan documents govern our inquiry, and there is no evidence that the Plan documents incorporate this policy. In sum, the Administrator's determination that the relationship information on the change of beneficiary form functions only as an identification tool, and that failure to provide that information does not render the form ineffective where the Plan can otherwise identify the beneficiary, is wholly consistent with Plan terms.

Finally, we consider whether Alliant's interpretation of the Plan conflicts with any of ERISA's substantive or procedural requirements. ERISA is silent on the processes for designating nonspouse beneficiaries and for resolving disputes between competing claimants to plan proceeds, but it defines a beneficiary as "a person designated by a participant . . . who is or may become entitled to a benefit." 29 U.S.C. § 1002(8); see also Metro. Life Ins. Co. v. Johnson, 297 F.3d 558, 564 (7th Cir. 2002). Where the participant's designation controls beneficiary status, as it does in Alliant's Plan, we look to the plain meaning of the plan documents to determine the

---

[3]Contrary to both the Bank's and the district court's factual statements, the record does not establish that James used white-out on the form. The Administrator's initial determination letter indicates that it "appears that" white-out "may have been" used in the relationship blank. The corrections checklist that Fidelity sent to James, however, indicates that the missing relationship information was the only problem with the form. The checklist instructed James not to use white-out in making corrections; it did not request that he complete a fresh form, Fidelity's typical instruction when a participant had used white-out in initially completing a form.

-14-

beneficiary.  Tucker v. Shreveport Transit Mgmt., Inc., 226 F.3d 394, 398 (5th Cir. 2000).  As discussed above, Alliant's determination that the 2002 designation was valid is consistent with Plan terms.  Thus, that determination does not conflict with ERISA's requirements.

Under the test set forth in Finley, we conclude that Alliant did not abuse its discretion in determining that James's 2002 beneficiary designation was valid.  Thus, Tracy is the rightful beneficiary of James's 401(k) account unless Rose proves that James lacked capacity when he executed the change of beneficiary form or that the form was the product of undue influence by Tracy.

IV.

Judicial review is de novo for questions that were within a plan administrator's authorized discretion but on which the administrator failed to render a decision.  Seman, 334 F.3d at 733; see also Mansker, 54 F.3d at 1328.  In this case, Alliant had discretion to determine all factual and legal questions under the Plan in addition to entitlement to benefits.  This authority would include issues of incapacity and undue influence.  Alliant declined to render a decision on these issues, instead filing this interpleader action.  The district court did not address Rose's claims that James lacked capacity or acted under undue influence from Tracy when he executed the change of beneficiary form in favor of Tracy in September 2002.

The parties have briefed the lack of capacity and undue influence issues to the district court and on appeal.  Because the district court did not decide the merits of these claims, which are heavily fact-based, we decline to consider them in the first instance.  See Younts v. Fremont County, 370 F.3d 748, 754 (8th Cir. 2004); see also Occino v. United States, 686 F.2d 1302, 1311 (8th Cir. 1982).  Although the Administrator had authority under the Plan to resolve these claims, it chose not to do so and instead filed this interpleader action.  Accordingly, we remand the case to the district court for its consideration of the remaining issues.

-15-

## V.

We reverse the district court's order granting summary judgment to Irwin Bank on behalf of Rose's estate and remand to the district court.

_____