In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 25-1859

PACKAGING CORPORATION OF AMERICA THRIFT PLAN FOR
HOURLY EMPLOYEES,

*Plaintiff-Appellee,*

*v.*

DENA LANGDON,

*Defendant-Appellant,*

*v.*

CHRISTINA COPISKEY, as the Personal Representative of the Estate of CARL W. KLEINFELDT and the Personal Representative of the Estate of TERRY SCHOLZ,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:23-cv-00663 — **James D. Peterson**, *Chief Judge.*

_____

ARGUED DECEMBER 10, 2025 — DECIDED FEBRUARY 2, 2026

_____

Before BRENNAN, *Chief Judge,* and LEE and KOLAR, *Circuit Judges*.

LEE, *Circuit Judge*. Carl Kleinfeldt participated in a retirement plan administered by his employer, the Packaging Corporation of America ("PCA"). Kleinfeldt designated his wife, Dená Langdon, as the primary beneficiary. After the couple divorced in September 2022, however, Kleinfeldt sent a fax to PCA's benefits center, requesting that Langdon be removed as the primary beneficiary. But, when Kleinfeldt died in January 2023, Langdon was still listed as the primary beneficiary of the account. This led to a dispute between Kleinfeldt's Estate and Langdon over the funds in the account.

Faced with this dispute, PCA initiated this interpleader action against the Estate and Langdon and was subsequently dismissed from the action. The two remaining parties then filed cross-motions for summary judgment; however, while they were pending, the district court determined that Kleinfeldt's sister, Terry Scholz, also had a potential interest as a surviving contingent beneficiary. The court joined Scholz's Estate (she had passed away after Kleinfeldt's death) as a necessary party. Then, invoking the substantial compliance doctrine, the district court found that Kleinfeldt had successfully removed Langdon as the beneficiary of the retirement account and granted summary judgment *sua sponte* in favor of Scholz's estate. Because Kleinfeldt did not satisfy the substantial compliance test, we reverse.

## I

### A. PCA's Retirement Benefit Plan

PCA operates an employee retirement benefit plan, the Thrift Plan for Hourly Employees ("Plan"), which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan's governing documents provide the

Committee with full discretion and authority to administer the Plan, including interpreting and applying the terms and conditions of the Plan.

The plan documents also detail the method by which a participant can designate beneficiaries to the individual's retirement account. Moreover, participants are given the following instruction: "You should keep your beneficiary designation and your beneficiary's address up to date. To do so, contact the PCA Benefits Center at [a designated phone number] or you can update your beneficiaries online."

In the absence of a valid beneficiary or if the designated party predeceases the participant, the Plan disburses the proceeds to the participant's spouse or estate, in that order. If a beneficiary survives the participant but dies before receiving distribution, the proceeds accrue to the beneficiary's estate.

## B. Kleinfeldt

The decedent, Carl Kleinfeldt, worked for PCA for approximately 32 years and participated in the company's Plan. Kleinfeldt married Dená Langdon in August 2006. That same year, Carl designated Langdon as the sole beneficiary of the Plan and Kleinfeldt's sisters, Terry Scholz and Lisa Kottke, as contingent beneficiaries. Kottke passed away in 2012.

Kleinfeldt and Langdon divorced on September 21, 2022. Pursuant to the divorce, Kleinfeldt and Langdon signed a Qualified Domestic Relations Order in November 2022, which allocated a portion of the proceeds in Kleinfeldt's retirement account to Langdon. As such, the Plan segregated Langdon's designated share from Kleinfeldt's account and disbursed the funds to her; the remainder remained as part of Kleinfeldt's retirement account.

Shortly after his divorce, on October 4, 2022, Kleinfeldt attempted to remove Langdon as the primary beneficiary of his retirement account. He directed his secretary to send a fax to the PCA Benefits Center requesting the Plan to "remove [his] former spouse" from his "health, vision[,] and dental insurance and as a beneficiary from [his] 401k, pension[,] and life insurance accounts." Exhibit C. Presumably in response, PCA removed Langdon from Kleinfeldt's health, vision, and dental insurance. As for the retirement account, PCA changed Langdon's status from "spouse" to "ex-spouse" but did not remove her as the primary beneficiary. Kleinfeldt died on January 16, 2023.

**C. Procedural History**

Following Kleinfeldt's death, PCA initially notified Langdon that it intended to distribute the funds in the retirement account to her as the primary beneficiary. Around this time, the Kleinfeldt Estate, represented by Scholz, also inquired into the account and submitted a Claim Initiation Form for the entirety of the proceeds; PCA denied this claim on May 18, 2023. A few days later, the Kleinfeldt Estate appealed PCA's denial of its claim, arguing that the October 4, 2022 fax had effectively removed Langdon as the primary beneficiary. Meanwhile, to preserve her own claim, Langdon submitted a Claim Initiation Form as well, demanding that the funds be distributed to her.

Faced with competing claims, the Plan filed an interpleader action under Federal Rule of Civil Procedure 22 in the district court and deposited the funds into the court's registry. PCA and the Plan were then dismissed from the action. And, as the litigation proceeded, the district court determined that, at the time of Kleinfeldt's death, Scholz also may have had a

potential claim as a contingent beneficiary. And so, the district court added her estate (Scholz passed away during the pendency of the lawsuit) as a defendant under Rule 19(a).

After discovery, Langdon and the Kleinfeldt Estate filed cross-motions for summary judgment. But, rather than granting one or the other, the district court denied both and instead granted summary judgment *sua sponte* to Scholz's estate. In short, the district court concluded that Kleinfeldt's actions of October 4 constituted substantial compliance with the terms of the Plan and, thus, were sufficient to remove Langdon as the primary beneficiary, which left Scholz as the contingent beneficiary. Langdon appeals.

## II

We review a district court's summary judgment decision *de novo. Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561 (7th Cir. 2002) (citation omitted). Summary judgment is appropriate where the record evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998). In this case, because Langdon appeals the denial of her summary judgment motion, we view the facts in the light most favorable to her. Before proceeding to the merits, however, we must address two threshold questions raised by the parties.

### A. Standard of Review

First, there is some question as to whether the Plan's initial decision to distribute the retirement funds to Langdon means we should apply the arbitrary and capricious standard when deciding the merits. Langdon answers in the affirmative, citing to *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), and *Butler v. Encyclopedia Britannica, Inc.*, 41 F.3d 285, 288 (7th Cir. 1994). But, in those cases, the plan administrator actually determined eligibility, either by determining the beneficiary and distributing the funds or by denying benefits outright. Here, as the Estate notes, the Plan threw its arms in the air and filed this interpleader action. Because the plan administrator here did not exercise its discretion to make a final determination as to the proper beneficiary, the applicability of the arbitrary and capricious standard is in some doubt.[1]

This question should not detain us long, however, for both parties agree that the district court's determination that Kleinfeldt satisfied the substantial compliance standard is a question of law that we review *de novo. See Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 631 (7th Cir. 2010) (citation modified) ("Where … the denial of benefits determination is based on an interpretation of law, we apply a *de novo* standard of review."); *Meyer v. Duluth Bldg. Trades Welfare Fund*, 299 F.3d

---

[1] It is true that the Plan initially designated Langdon as the beneficiary and notified her that the totality of retirement funds was placed into a separate account in her name on February 16. But once this dispute arose, the Plan froze those funds before Langdon could access them. Langdon also points to the Plan's May 18, 2023, letter denying the Estate's claim as evidence that the Plan made a final determination. But the letter itself indicated that it was not a final decision, stating that "th[e] claim denial will *become* final" unless the Estate appealed, which it did.

686, 689 (8th Cir. 2002) (citation modified) ("[W]here a plan's decision to deny benefits is based on its construction of existing law, the plan's interpretation of a controlling principle of law is reviewed *de novo*.").

The Eighth Circuit's decision in *Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 868 (8th Cir. 2006), does not counsel a contrary conclusion. Like here, the plan administrator in that case made an initial beneficiary determination but initiated an interpleader action when another potential beneficiary appealed. Because the plan provided the administrator with discretion to "determine all factual and legal questions under the Plan" based on the "terms of the Plan," the Eighth Circuit concluded that the Plan's initial determination was entitled to "deference under the abuse of discretion standard." *Id.* at 868–70. Notably, however, the court acknowledged that "[j]udicial review is de novo … where an administrator did not exercise the discretion granted to it, … and for issues that were within the administrator's discretion but on which the administrator failed to render a decision." *Id.* at 868 (citations omitted).

Unlike the plan in *Alliant Techsystems*, the Plan here does not bestow upon the administrator the discretion over "legal questions under the Plan." Nor did PCA make any determination as to whether Kleinfeldt met the substantial compliance test. In fact, when the Kleinfeldt Estate submitted its claim to the Plan, it argued primarily that, due to the divorce decree, Wisconsin law revoked any interest Langdon may have had in the remaining retirement funds. The Plan denied

the claim but allowed the Estate to appeal.[2] It was for the first time on appeal that the Kleinfeldt Estate raised an argument that sounded in substantial compliance, contending that Kleinfeldt had "properly and legally communicated his intention to have his ex-spouse removed as a beneficiary entirely from the plan." But, rather than addressing this issue, the Plan filed the interpleader action. Thus, even under the framework adopted by the Eighth Circuit in *Alliant Techsystems*, we would review the question of substantial compliance *de novo*.

## B. Substantial Compliance Doctrine Post-*Kennedy*

Next, Langdon argues that the Supreme Court in *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009) vitiated the federal common law doctrine of substantial compliance. As we have observed, ERISA's statutory scheme "does not contain any provisions governing disputes between claimants to plan proceeds, or addressing whether an insured has effectively changed a beneficiary designation." *Johnson*, 297 F.3d at 564. Consequently, in situations like this, where ERISA preempts state law but is silent on a controlling issue, the Supreme Court has recognized the need for a body of federal common law based on state-law principles. *See Bruch*, 489 U.S. at 110 (citation modified) ("We have held that courts are to develop a federal common law of rights and obligations under ERISA-regulated plans."); *see also Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir. 1993)

---

[2] The Plan's denial letter states that "the Plan's procedures do not allow a Plan beneficiary designation to be changed based on a faxed request." It also states that Kleinfeldt "did not take the actions necessary to change his Plan beneficiary prior to his death." The Plan did not address the substantial compliance doctrine.

(explaining that where ERISA is silent, courts must develop new federal common law and may use state common law as a basis, to the extent that state law stays consistent with congressional policy concerns).

Rooted in federal common law, we have long recognized the doctrine of substantial compliance in ERISA cases. *See, e.g., Johnson*, 297 F.3d at 567–68 (citation modified) (adopting the common-law rule of substantial compliance for change-of-beneficiary forms for ERISA-governed life insurance plans); *Davis v. Combes*, 294 F.3d 931, 940 (7th Cir. 2002) (citation modified) ("The concept of substantial compliance is part of the body of federal common law that the courts have developed for issues on which ERISA does not speak directly."). This is so, even though we have "consistently refused to create federal common law remedies or implied causes of action under ERISA." *Bauwens v. Revcon Tech. Grp., Inc.*, 935 F.3d 534, 538 (7th Cir. 2019). This then leads us to *Kennedy*.

*Kennedy* involved an employee who had designated his wife as the sole beneficiary of his ERISA employee pension plan. 555 U.S. at 289. The couple divorced, and the wife agreed as part of the divorce decree to waive her interest in her husband's pension plan. *Id.* The husband, however, died before removing his ex-wife as the designated beneficiary. *Id.* His estate then requested that the plan administrator disburse the funds to the estate based on the divorce decree, but the plan administrator refused, citing the husband's original designation form, and provided the funds to the ex-wife. *Id.* at 290. At that point, the estate sued the plan administrator, arguing that the ex-wife had waived her rights to the retirement funds as a matter of federal common law.

The question before the Supreme Court was "whether a beneficiary's federal common law waiver of plan benefits is effective where that waiver is inconsistent with the plan documents." *Id.* at 292. The Court answered in two steps. First, it found that the ex-wife's waiver was not barred by ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1). *Id.* at 292–297. More relevant for our purposes, however, the Supreme Court also held that the plan administrator was not obligated to honor the waiver because it was entitled to rely on the plan documents, which directed disbursement of the funds in accordance with the deceased's beneficiary designation form (which the husband had failed to change).

A plan administrator is "obliged to act in accordance with the documents and instruments governing the plan," the Supreme Court observed, "and ERISA provides no exemption from this duty when it comes time to pay benefits." *Id.* at 300 (citation modified). "The point is that by giving a plan participant a clear set of instructions for making his own instructions clear," the Court continued, "ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule." *Id.* at 301. Such a rule eliminates the need for "a plan administrator to figure out whether a claimed federal common law waiver was knowing and voluntary, whether its language addressed the particular benefits at issue, and so forth, on into factually complex and subjective determinations." *Id.* at 302; *see In re Radcliffe,* 563 F.3d 627, 633 (7th Cir. 2009) ("Under *Kennedy,* the administrator is obligated to pay the benefits in conformity with plan documents without resort to external documents[.]"). And this, in turn, promotes "simple administration, avoiding double liability [for plan administrators], and ensuring that beneficiaries get what's coming quickly,

without the folderol essential under less-certain rules." 555 U.S. at 301 (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting)). As Langdon sees it, the same reasoning invalidates the federal common law substantial compliance doctrine and requires the Plan to strictly follow the terms of the plan documents and Kleinfeldt's original designation of beneficiary.

Recently, however, the Sixth Circuit rejected a similar argument that invoked *Kennedy* to challenge the continued viability of the common law "slayer rule" (this rule bars a designated beneficiary, who murders the plan participant, from benefiting from the crime). *Standard Ins. Co. v. Guy*, 115 F.4th 518 (6th Cir. 2024). Although the argument appeared persuasive "[a]t first blush," the Sixth Circuit observed, "*Kennedy* itself provided several reasons to believe that ERISA's pay-the-designated-beneficiary rule admits of some, if few, exceptions," with the slayer rule being one. *Id.* at 523.

Similarly, there is reason to think that the substantial compliance doctrine survives *Kennedy* in circumstances like those before us. For when a plan administrator does not exercise its discretion to make a final beneficiary determination and instead leaves it up to the court, "the need for the straightforward administration of plans and the avoidance of potential double liability—while central to the Supreme Court's decision in *Kennedy*, are not implicated." *Est. of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 136 (3d Cir. 2012) (holding that *Kennedy* does not apply when one potential beneficiary of an ERISA plan has sued another after the plan administrator has

disbursed the funds);[3] *see also Hall v. Metro. Life Ins. Co.*, 750 F.3d 995, 1000 (8th Cir. 2014) (observing courts may invoke substantial compliance doctrine in interpleader actions and when conducting *de novo* review) (citations omitted). But, because we think Langdon prevails either way, we will assume without deciding the continued viability of the substantial compliance doctrine here. *Cf. id.* at 999 (assuming substantial compliance doctrine applies post-*Kennedy* when deciding the case).

## C. Substantial Compliance

PCA's plan documents provided Kleinfeldt with specific instructions on how to change the beneficiary to his retirement account: "You should keep your beneficiary designation and your beneficiary's address up to date. To do so, contact the PCA Benefits Center … or you can update your beneficiaries online." Instead of following this procedure, Kleinfeldt

---

[3] *Accord Gelschus v. Hogen*, 47 F.4th 679, 685 (8th Cir. 2022) ("[E]very circuit to address the question [whether a personal representative may sue a recipient of ERISA benefits after distribution] holds that ERISA does not preempt such suits."); *Andochick v. Byrd*, 709 F.3d 296, 299–300 (4th Cir. 2013) ("[W]e conclude that permitting post-distribution suits [between competing beneficiaries] accords with the ERISA objectives discussed in *Kennedy*."); *MetLife Life & Annuity Co. of Conn. v. Akpele*, 886 F.3d 998, 1007 (11th Cir. 2018) ("This court likewise holds as mandated by the Supreme Court in *Kennedy* that a party who is not a named beneficiary of an ERISA plan may not sue the plan for any plan benefits. A party, however, may sue a plan beneficiary for those benefits, but only after the plan beneficiary has received the benefits.").

submitted his change request via a fax sent on October 4, 2022.[4]

To determine whether Kleinfeldt's actions met the substantial compliance doctrine, we consider whether "the insured (1) evidenced his intent to make the change and (2) attempted to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." *Davis*, 294 F.3d at 941 (citation modified) (adopting the federal common law substantial compliance test as articulated in *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994)); *see also Johnson*, 297 F.3d at 567 (noting Seventh Circuit's adoption of the *Phoenix Mutual* test).

### 1. Intent

The first element is undeniably met here: Kleinfeldt's fax unequivocally evidences his intent to make a change of beneficiary. The fax instructs the Plan to "remove my former spouse, Dená Suzanne Kleinfeldt, from the health, vision[,] and dental insurance and as a beneficiary of my 401(k), pension[,] and life insurance accounts."

Unconvinced, Langdon points to the subsequent sentence in the fax which reads: "Please feel free to fax any necessary paperwork to the above fax that I may need to complete." *Id.* This, she argues, demonstrates that Kleinfeldt knew the fax alone was insufficient to remove Langdon as a beneficiary.

---

[4] Langdon disputes that Kleinfeldt "sent" the fax, saying it was actually sent by Jordan Renn, an HR manager at PCA In her proposed facts, however, Langdon admits that Kleinfeldt directed Renn to send the fax, so we think this distinction immaterial.

But substantial compliance does not require the participant to believe they have completed every step in the process. *See Davis*, 294 F.3d at 931 (citation modified) (substantial compliance does not require a plan participant to do "all that he could have done."). Even under Langdon's view of the record, Kleinfeldt's fax is a clear expression that he wanted Langdon removed from all of his benefit plans, including his retirement plan.

### 2. Positive Action

Whether Kleinfeldt undertook "positive action which is for all practical purposes similar to the action required by" the plan documents, *Davis*, 294 F.3d at 941 (citation modified), is a closer question and requires a deeper dive into our prior application of the doctrine.

In *Johnson*, for example, the decedent completed the beneficiary-change form the plan documents required but made minor clerical errors, such as listing the wrong address and marital status, before returning the form to his employer. 297 F.3d at 560–61. In holding that the substantial compliance doctrine was met, we emphasized that the decedent had utilized the correct procedure and that the administrator had everything it needed to know what the decedent wanted to accomplish. *Id*. at 568 (finding substantial compliance where the decedent "filled out [the required] form," "designated [persons] as the new beneficiaries," and received a "confirmation letter indicating that he mailed the form as required.").

Similarly, in *Davis*, the decedent completed the required change-of-beneficiary form, designated a new beneficiary, and returned the form to the plan administrator, who accepted and processed the form as though it was complete. The

decedent's only failing was not signing and dating the form. 294 F.3d at 942. "On these facts," we observed, "her failure to sign and date the form can only be construed as carelessness" and found that the decedent had substantially complied with the plan's change-of-beneficiary requirements. *Id.*

Likewise, in *Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 662 (7th Cir. 1999), the decedent had a life insurance policy sponsored by his employer. After divorcing his first wife, he successfully completed a change-of-beneficiary form and designated his parents as beneficiaries. *Id.* He got remarried, however, and replaced his parents with his second wife. *Id.* After another divorce, he informed his employer and received an enrollment form and verification of divorce. *Id.* The cover letter instructed him that, to remove his second ex-wife as a beneficiary, he needed to complete the portions on the form marked with an "X." *Id.* The problem was that the employer had failed to mark the beneficiary designation portion of the form with an "X," and the decedent completed all of the marked sections, returned the form, but left the beneficiary designation section blank. *Id.* at 663. Later that year, he executed a will evidencing his intent to leave all of his assets to his parents and committed suicide the following day. *Id.* at 662–63. Given such facts, we had little trouble finding that the decedent had done "everything he could have reasonably done to carry out his intention to change the beneficiary" of his life insurance policy. *Id.* at 664.[5]

---

[5] Although our decision in this case was based on our analysis of Illinois common law, we have observed elsewhere that the Illinois doctrine of substantial compliance and the federal common law test "are essentially the same." *Johnson*, 297 F.3d at 567.

By contrast, consider *Rendleman v. Metropolitan Life Insurance Co.*, 937 F.2d 1292 (7th Cir. 1991). That case involved a dispute over the proceeds of a life insurance policy. The insured underwent a divorce and, soon afterwards, dropped his ex-wife from his group health insurance program provided by his employer. He then told a co-worker that he intended to remove his ex-wife as a beneficiary to his life insurance policy as well, but there was no evidence that he ever obtained the change-of-beneficiary form that his policy required or completed such a form. *Id.* at 1294. Applying Illinois common law principles of substantial compliance, we held that the decedent had not met the test because "he was aware of the necessary procedure for effectuating a change in his life insurance coverage and simply failed to do so." *Id.* at 1297.

Another illustrative example (albeit outside our circuit) is *Prudential Insurance Co. of America v. Schmid*, 337 F. Supp. 2d 325, 327 (D. Mass. 2004). There, the decedent attempted to name his second wife as the beneficiary of his employer-sponsored life insurance policy. During a phone call with the insurer, the decedent informed an agent that he wished to designate his wife as the beneficiary for his life insurance policy. *Id.* The insurer's agent incorrectly told him that his wife was already the designated beneficiary, so the decedent did not complete the necessary change-of-beneficiary form. *Id.* Relying on *Phoenix Mutual*, the court concluded that, as a matter of federal common law, the decedent had not substantially complied with the policy's requirements because the "telephone conversation [did] not suffice as a positive act to accomplish [decedent's] intent" and he had not even attempted to fill out a change-of-beneficiary form. *Id.* at 332.

Here, appellants argue that Kleinfeldt's sending of the fax to PCA "is for all practical purposes similar to" the procedures set forth in the plan documents. We disagree. In those cases where we found substantial compliance, the plan participants took pains to follow the procedures the plan required, including obtaining the appropriate forms and even completing them to the extent they were able. But, here, Kleinfeldt did not even attempt to utilize the proper procedures. Nowhere in the plan documents is the participant allowed to request a beneficiary change via fax. Put another way, the manner Kleinfeldt chose to remove Langdon as a beneficiary evidences much more than "careless error," *Davis*, 294 F.3d at 941; it is a method that deviates materially from the Plan's terms and falls short of being "for all practical purposes similar to" the procedures required by the plan documents, *Johnson*, 297 F.3d at 566 (citation modified).

Indeed, in his message, Kleinfeldt requested that the Plan "fax [him] any necessary paperwork … that [he] may need to complete" to effectuate the beneficiary change. This suggests that, although Kleinfeldt certainly wanted to remove Langdon as a beneficiary, he himself understood that further steps may have been required to do so. Rather than following up with PCA, however, Kleinfeldt did nothing more.

On these facts, we hold that Kleinfeldt did not substantially comply with the plan's beneficiary-change requirements. As such, at his death, Langdon remained the primary beneficiary, and Scholz's estate the contingent beneficiary.[6]

---

[6] Because we hold that Langdon was the primary beneficiary, we need not address the parties' remaining arguments.

\*      \*      \*

For the foregoing reasons, the judgment is REVERSED and REMANDED for entry of judgment for Langdon.