**HARTFORD LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Kathryn EINHORN, as Executrix of the Estate of Claire A. MEHRING, deceased, Kathryn Einhorn, individually, Christopher Mehring, Edmond Mehring, and Maureen Curran, Defendants.**

No. CV 04–2738(ADS).

United States District Court, E.D. New York.

Dec. 30, 2009.

Sedgwick, Detert, Moran & Arnold LLP, by Michael H. Bernstein, Esq., John T. Seybert, Esq., Colleen Anne DeNoto, Esq., of Counsel, New York, NY, for Plaintiff Hartford Life Insurance Company.

Randy M. Stein, Esq., Carlucci & Legum, LLP, by Steven G. Legum, Esq., of Counsel, Mineola, NY, for Kathryn Einhorn, Individually, and Co–Counsel for Kathryn Einhorn, as Executrix of the Estate of Claire A. Mehring.

Christopher Mehring, Huntington, NY, Defendant pro se.

Edmond Mehring, Old Greenwich, CT, Defendant pro se.

Maureen Curran, Smithtown, NY, Defendant pro se.

SPATT, District Judge.

This case pits a surviving niece of the decedent against her brother and sister in a dispute over the proceeds of a life insurance policy. The key issue presented is whether a signed but undated Change of Beneficiary form constituted "substantial compliance" with the requirements for changing the beneficiaries of the policy.

This case began as a federal interpleader action, filed pursuant to 28 U.S.C. § 1335, in which the plaintiff Hartford Life Insurance Company ("Hartford") sought to deposit with the Court the proceeds of a group life insurance policy ("the Policy") issued to Swiss Re America Holding Corporation ("Swiss Re"). The policy afforded life insurance coverage to eligible employees of Swiss Re. The decedent Claire A. Mehring ("the decedent" or "Claire") was such an employee until her retirement on June 30, 1995.

After her retirement, the amount of the life insurance policy was reduced from $200,000 to $50,000. It soon became apparent that this fund was subject to the competing claims of the various defendants in this case. On September 19, 2006, 452 F.Supp.2d 126, the Court granted Hartford's motion for summary judgment on its interpleader cause of action, and directed that it deposit the sum of $50,000 with the Court registry in an interest bearing account within twenty days of the date of that order. Hartford complied with the Court's order and deposited the disputed funds with the Court. At that time, Hartford was released from any further liability to any party in this action with regard to the subject life insurance policy.

The original Designation form signed by the decedent and dated December 12, 1991 states that each of the decedent's nieces and nephews, Kathryn Mehring Einhorn ("Kathryn"), Christopher T. Mehring ("Christopher"), Edmond P. Mehring

("Edmond"), and Maureen Mehring Curran ("Maureen") are twenty-five percent beneficiaries of the Policy. Thus, under the original designation each of the four beneficiaries including the three *pro se* defendants would receive $12,500 of the Policy proceeds.

However, under the undated, apparently later executed beneficiary change, the proceeds would be paid to the Estate of the decedent. According to the decedent's will, the $50,000 proceeds of the Policy would, after being placed in Claire's estate, be divided as follows: Kathryn Mehring Einhorn, 50% or $25,000; Christopher T. Mehring 30% or $15,000; Edmond P. Mehring 10% or $5,000; and Maureen Mehring Curran 10% or $5,000.

Also, in a subsequent order of this Court dated June 29, 2007, 497 F.Supp.2d 398, the Court denied a motion for summary judgment by the defendant Kathryn Einhorn, as Executrix of the Estate of Claire A. Mehring ("the Estate"). In its motion, the Estate asserted that it is entitled to one-hundred percent of the proceeds of the policy pursuant to the subsequently executed, although undated, change of beneficiary form ("the Beneficiary Change"). If the proceeds of the policy are paid to the Estate, the decedent's will would dictate that the monies would be divided differently from the percentages delineated in the original beneficiary designation, as stated above.

In the Court's prior September 19, 2006 order it was determined that the decedent's signature does appear in the Beneficiary Change. In the Court's June 29, 2007 order, the following determinations were made—which form the basis for the bench trial which subsequently was held:

> As indicated above, the Court previously found that the signature on the Beneficiary Change form is the signature of the decedent Claire Mehring.

The Court is not willing to hold, as a matter of law, that this evidence sufficiently establishes the decedent's intent to make the beneficiary change . . . Also, although the *pro se* defendants' papers consist largely of statements of unsupported speculation, they have presented evidence that could be interpreted as casting doubt on the decedent's intent to change her beneficiary to the Estate.

Jean Hegler is the attorney who states in an affidavit that her firm represented the decedent at the time she changed her beneficiary to her Estate. The Beneficiary Change is not dated, but the Estate presented evidence that it was mailed to Swiss Re from Hegler's law firm on January 10, 2003. However, the individual defendants presented a letter, dated September 16, 2002, from Hegler to Howard Einhorn, who is the husband of Kathryn Einhorn, the executor of the Estate. . . . In the letter, Hegler indicates that Howard Einhorn had access to certain of the decedent's accounts, and used that access to inappropriately transfer approximately $400,000 in stocks and bonds to his wife Kathryn Einhorn without the decedent's knowledge. These monies were returned to the decedent's account after approximately three months of requests and demands from the decedent's counsel.

\*   \*   \*   \*   \*   \*

Considering the individual defendants' *pro se* status, and granting them every favorable inference as the non-moving party, the Court finds that this evidence is sufficient to establish a genuine issue of material fact for trial regarding the decedent's intent to change her beneficiary and also as to the date of the change of beneficiary. A reasonable juror could conclude that the decedent would not have intended to change her beneficiary in a manner that would ben-

efit an individual whose husband was thought to have recently attempted to misappropriate a substantial sum of money from her. In addition, the issue of the undated change of beneficiary requires an evidentiary hearing.

The questions regarding the allegedly inappropriate asset transfers are exacerbated by the fact that Hegler's law firm mailed the Beneficiary Change form to Swiss Re at a time when, according to Hegler's own letter, the firm no longer represented the decedent. Accordingly, the Estate's motion for summary judgment is denied.

## I.  *THE TRIAL*

### A. *The case of Kathryn Einhorn as Executrix of the Estate of Claire A. Mehring, Deceased and Kathryn Einhorn, individually*

Jean Hegler is an attorney who specializes in Trusts and Estate law and Elder law. In the fall of 2001, the decedent Claire A. Mehring consulted with her on four or five occasions. Ms. Hegler was retained to prepare a will and a power of attorney for the decedent. She also did estate planning for the decedent. In September or October 2002, Ms. Hegler prepared a second will for the decedent. However, prior to this time, in August 2002, she took steps to withdraw as the decedent's attorney. She did this because of difficulties in dealing with the decedent's financial advisors and her beneficiaries, including vulgarities spoken to her by Christopher Mehring. In August 2002, Ms. Hegler gave the decedent a letter withdrawing as her counsel. However, because of difficulty in obtaining new counsel, Ms. Hegler agreed to draw her second will, which was signed by the decedent in October 2002.

At that time, Ms. Hegler also discussed a change of beneficiary for the Swiss Re

Policy. The decedent apparently had concerns that some of her beneficiaries were giving trouble to her executrix, Kathryn Einhorn. The decedent wanted to avoid such "trouble" after her death. The decedent decided to distribute her estate in the following manner: Kathryn 50%; Christopher 30%; Edmond 10%; and Maureen 10%. At that time Ms. Hegler suggested that an In Terrorem Clause be inserted in the will, which would provide that if anyone contested the will he or she would lose his or her share in the estate. Ms. Hegler also recommended a change in the beneficiaries of the Policy to make the Estate the sole beneficiary, so as to effectuate the In Terrorem provision for that money as well as the other assets of the estate. Apparently, the decedent agreed with those proposed changes.

Ms. Hegler took steps to effectuate the change of beneficiary of the Policy. She contacted Swiss Re and obtained a change of beneficiary form. She completed the form with the newly designated beneficiary being the decedent's Estate. Ms. Hegler prepared two change of beneficiary forms. One was for the Savings Plan (Ex. 2) and the other was for the Life Insurance Policy (Ex. 3). Ms. Hegler prepared both change of beneficiary forms in December 2002 or January 2003. She apparently mailed both forms to the decedent to be signed and returned. When Ms. Hegler received both forms from the decedent, they were both signed and both were undated. When the change of beneficiary forms were received by Ms. Hegler she did not date the forms.

The Court notes that the Swiss Re change of beneficiary form is a large printed form with the printed words "Beneficiary Information–Life Insurance Change Form" on the top. Typed on the form is the decedent's social security number, the

name "Claire Mehring" and the words "My Estate" in the space for beneficiary's name. Under the column (believed to state "percentage of proceeds") is the figure 100%. At the bottom is the signature of Claire A. Mehring. Significantly, the Court notes that unlike the beneficiary designation for the Savings Plan, the Policy change of beneficiary form does not have a space designated for the date.

Joseph S. Vona, Esq., an attorney in Ms. Hegler's office, sent the undated form to Swiss Re on January 10, 2003 with a cover letter (Ex. 1) certified mail, return receipt requested. The transmittal letter stated:

January 10, 2003

VIA CERTIFIED MAIL
*RETURN RECEIPT REQUESTED*

Swiss Re–America
175 King Street
Armonk, New York 10504

RE: Claire A. Mehring
    Social Security No. XXX–XX–XXXX [redacted by publisher]
    *Participant's Beneficiary Designation*

Dear Sir or Madam:

We are the attorneys for Claire A. Mehring ("Ms. Mehring") in connection with the above referenced matter. I have enclosed for your review and records a Participant's Beneficiary Designation Form executed by Ms. Mehring. Please adjust your records in accordance with Ms. Mehring's wishes.

Thank you for your attention to this matter. If you have any questions, please call me.

Very truly yours,
Joseph S. Vona

JSV:kd
enclosures
cc: Jean A. Hegler, Esq.
    Ms. Claire Mehring

Also received in evidence is a United States Postal Service Certified Mail Receipt (Ex. 4), indicating that the transmittal letter and the Change of Beneficiary form were received by Swiss Re in Garden City on January 13, 2003. Ms. Hegler concluded her direct examination by stating that she never received any word from the decedent that she did not want the Estate to be the beneficiary of the Policy.

On cross-examination, Ms. Hegler testified that she met the decedent through the Einhorns, who live near her and are acquaintances. However, she stated that she had no business dealings with the Einhorns. The decedent had her financial account with a firm called Montauk Financial Group in Red Bank, New Jersey. The decedent had sent letters to each sibling saying that she was going to give cash and gifts to each one. In December 2001, Ms. Hegler requested the social security numbers and addresses from the beneficiaries.

On April 18, 2002, Ms. Hegler wrote to Edmond Mehring at the request of Kathryn Einhorn "who is the agent-in-fact for Claire Mehring," stating that she has been "directed to cease all work on Ms. Mehring's matters" (Ex. A). While at one time the decedent contemplated forming trusts for each beneficiary, by January 18, 2003 she discarded this idea. Instead, the decedent decided to set up individual accounts for each beneficiary. In this regard, the decedent expressed repeated concern to Ms. Hegler that she wanted Montauk Financial to move her assets and set up individual accounts for her beneficiaries.

Ultimately, accounts were set up in four unequal shares, designed to parallel the percentages of the beneficiaries of her Estate, as follows:

| Kathryn Einhorn | – | 50% |
| Christopher Mehring | – | 30% |
| Edmond Mehring | – | 10% |
| Maureen Curran | – | 10% |

Ms. Hegler related that, in 2001, there were prior Swiss Re change of beneficiary forms, both for the Policy and for the Savings Plan, in the same percentages as stated above. On December 21, 2001, Ms. Hegler's associate Joseph S. Vona sent a letter to Swiss Re enclosing a "Beneficiary Information Life Insurance Change Form and an Employee Pension Plan Participant's Beneficiary Designation," executed by Ms. Mehring (Ex. 5). The letter further requested that Swiss Re adjust its records "in accordance with Ms. Mehring's wishes." Enclosed in this letter were two change of beneficiary forms signed by Claire A. Mehring. The first was entitled "Beneficiary Information Life Insurance Change Form (Ex. 6) and the employee's name was Claire A. Mehring. The designated beneficiaries were the decedent's four nieces and nephews. Their names and addresses and relationship was typed on the document. Under the column "Percent of Proceeds" was written in handwriting the following percentages and initials:

| Kathryn Einhorn | – | 50% | CAM |
| Christopher Mehring | – | 30% | CAM |
| Edmond Mehring | – | 10% | CAM |
| Maureen Curran | – | 10% | CAM |

The change of beneficiary form at issue in this case was signed by the decedent and was undated. Also, apparently enclosed in this transmittal letter of December 21, 2001, was a second change of beneficiary form for the Savings Plan. The four named beneficiaries and the percentage of proceeds for the Savings Plan was the same as in the change of beneficiary for the Life Insurance policy. The Court notes that both of these changes of beneficiary forms were undated. The Court further notes that the change of beneficiary form for the Savings Plan had a place for the date with the printed word "Date". However, the change of beneficiary form for the Policy had no similar word "Date" on the form. There was no designated

place for a date on the change of beneficiary form at issue in this case.

On October 24, 2001, Ms. Hegler's associate Joseph S. Vona sent a letter to Kathryn Einhorn (Ex. C) enclosing three duplicate original power of attorney forms for the decedent to execute "in order for you to carry out the wishes of your aunt, Claire Mehring". Five days after this letter was sent to Ms. Einhorn, the decedent confirmed to Ms. Hegler that she had signed the three power of attorney forms.

On November 29, 2001, Ms. Hegler sent a letter addressed to the four heirs (Ex. D). The letter stated that in late 2001 and early 2002, the decedent intends to make gifts of stocks and bonds to be maintained at the Montauk Financial Group in Cold Spring Harbor. The letter further stated that the assets should not be used during the decedent's lifetime "but rather left intact in the event that she needs the funds for any reason at any time." The letter also asked for the personal and employment information for each of the beneficiaries. It was contemplated that individual joint accounts would be set up by Montauk Financial. Ms. Hegler assumes she received the information requested by each of the heirs and she forwarded it to Howard Einhorn of Montauk Financial.

Ms. Hegler followed up this situation with a letter to the four beneficiaries dated December 7, 2002 (Ex. E). In this letter she enclosed Form W–9s, "in order to open your new accounts at Montauk Financial Group." Again, Ms. Hegler assumes she received and forwarded the W–9 forms to Howard Einhorn at Montauk Financial. Ms. Hegler had "tremendous difficulty" with Montauk Financial but, by June 2002, the four accounts were set up and fully funded.

Also in evidence is a letter to the decedent from attorney Vona dated June 28, 2002 (Ex. F) in which is enclosed a letter

dated December 26, 2001 (Ex. G) with instructions from the decedent to the Montauk Financial Group. This letter instructed Montauk Financial to "transfer all funds/securities" in her account to the four beneficiaries in the unequal amounts: the greater amounts were to Kathryn and Christopher and the lesser amounts to Maureen and Edmond.

It is noted that each of the three accounts for the three siblings of Kathryn Einhorn also included her name. The letter further noted that Montauk was directed to "transfer any remaining assets to the account of Kathryn Einhorn". Ms. Hegler testified that this letter and Exhibit P, to be discussed later, were drafted by her office.

As stated above, there is in evidence another letter similar to Exhibit G, from the decedent to Montauk Financial Group, also dated December 26, 2001 (Ex. P). This letter, also drafted by Ms. Hegler, was similar in many respects to Exhibit G except that it also directed Montauk Financial to "Issue a check in the amount of $87,000 payable to Kathryn Einhorn and forward same to my niece Kathryn Einhorn". Ms. Hegler doesn't recall if she saw the decedent Claire Mehring sign the letters dated December 26, 2001 (Exhs. G & P). However, Ms. Hegler testified that only one letter of authorization signed by the decedent was sent to Montauk Financial. She doesn't know which letter (Ex. G or P) was sent.

Howard Einhorn, the husband of Kathryn Einhorn, was the decedent's broker with Montauk Financial. It is presumed that he received the authorization to set up the four accounts. According to Ms. Hegler, the four accounts were set up by Montauk Financial between February and August 2001. This is somewhat strange, because the decedent's authorization to set up the accounts is dated December 26, 2001.

When Ms. Hegler reviewed the statements from Montauk Financial, it was revealed that the sum of $440,000 was placed in the account of Kathryn Einhorn without authorization from the decedent. After she ascertained this troubling problem, Ms. Hegler called Montauk Financial and "screamed and yelled". Finally, after a two month delay, Montauk Financial restored the $440,000 to the decedent's account.

In addition to this problem, Ms. Hegler testified that some of the newly formed accounts were missing funds. On May 31, 2002, Ms. Hegler wrote a four page letter to an attorney for Montauk Financial (Ex. R). Among other matters, this letter stated:

> Upon our review of the statements for the above referenced accounts, we have discovered that certain Treasury Notes, specifically, cusip numbers 912827609, 912827683 and 9128275S7 were not transferred from Ms. Mehring's account in accordance with ms. Mehring's letter of authorization.

> *   *   *   *   *   *

> Upon transfer of the Treasury notes, please forward to our office documentation evidencing proof of transfer.

> As we have discussed on numerous occasions, we believe that certain equities and securities, with an estimated value of approximately $443,350.25, were transferred from Ms. Mehring's account to Kathryn Einhorn without Ms. Mehring's knowledge, authorization and/or approval. Upon our review of the statements, we have verified that the following securities have been transferred to Kathryn Einhorn without Ms. Mehring's knowledge.

> *   *   *   *   *   *

Both Howard Einhorn, the broker/representative assigned to Ms. Mehring's account, and Kathryn Einhorn, have informed us that the above-mentioned securities were mistakenly transferred from Ms. Mehring's account and would immediately be subsequently re-deposited into Ms. Mehring's account. However, despite our numerous requests, we have not yet received verification that the equities have been returned to Ms. Mehring's account in their entirety.

\* \* \* \* \* \*

We are both concerned and troubled with regard to such transfer of Ms. Mehring's assets and the delay we have encountered in trying to rectify this situation with Montauk Financial Services. If required, we are prepared to use all legal remedies available to ensure the return of Ms. Mehring's assets. Therefore, we hope that this matter can be resolved quickly and without further delay.

Thank you for your attention to this matter. If you have any questions, please call me.

Very truly yours,
Jean A. Hegler

JAH:kd
cc: Ms. Claire Mehring
cc: Joseph S. Vona, Esq.

Some eight days later, on June 8, 2002, Ms. Hegler wrote another letter (Ex. S) to Paul Lieberman Esq., at Montauk Financial in which the following statements were made:

Let me begin by saying that I am bewildered that you were not aware of our concerns regarding the transfer of assets from Ms. Mehring's account without Ms. Mehring's knowledge, authorization and/or approval.

Over the past three weeks we informed you on numerous occasions by telephone, and by letter dated May 31, 2002 (copy enclosed), that approximately $443,350.25 of various securities were transferred from Ms. Mehring's account to Kathryn Einhorn without Ms. Mehring's knowledge, authorization and/or approval. Additionally, we demanded that such securities be immediately returned to Ms. Mehring's account. In response to our demands, you had informed us that the securities were re-deposited into Ms. Mehring's account. However, upon our review of Ms. Mehring's Account statement for May 31, 2002 we discovered that Ms. Mehring's account had a $0.00 balance. As we discussed, we are upset and displeased with regard to the delay in the return of the securities to Ms. Mehring's account and the various misrepresentations that the securities had been returned.

I am in receipt of your fax dated June 7, 2002, which indicates that Ms. Mehring's account currently has a balance of $316,603.90. However, the statement/printouts you provided only set forth securities totaling $169,257.70. As per your request and upon receipt of your fax, Joseph Vona of my office spoke with Howard Einhorn who indicated that three-quarters (3/4) of the securities had been returned to Ms. Mehring's account and that the balance of the securities would be returned to Ms. Mehring's account this week.

Accordingly, we request that by the *end of business on Monday, June 10, 2001* you, and/or Howard Einhorn, provide us with an updated account statement for Ms. Mehring's account, as of the date hereof, together with a list of all securities that have yet to be transferred into Ms. Mehring's account. Additionally, as we previously requested, please provide us with and any and all

documentation relating to the securities returned to Ms. Mehring's account including, without limitation, (1) the date of the return transfer of each security (2) the value of the transferred security on the original date of transfer and the value of each security on the return date of transfer, and (3) all trade confirmations and/or trade orders made in connection with the above-referenced securities. Further, please confirm to us that all dividends and interest on such assets earned during the time they were incorrectly in Ms. Einhorn's account were also refunded to Ms. Mehring's account.

We hope that this matter can finally be resoled without any further delay.

Very truly yours,
Jean A. Hegler

cc: Ms. Claire Mehring
Joseph S. Vona, Esq.
Enc.

Eventually, after more than an eight month delay, all the money belonging to the decedent "mistakenly" transferred to Kathryn Einhorn's account were returned. No criminal or civil proceedings were initiated against Howard Einhorn.

On August 30, 2002, Ms. Hegler wrote a five page letter to the decedent, (Ex. AF) in which she stated:

You retained this firm to assist you in connection with your estate and elder law planning. At your request, we (I) prepared and supervised the execution of your Last Will and Testament (the "Will") and Power of Attorney, and (ii) followed your instructions in making certain gifts of cash and securities to your nieces and nephews, Kathryn Einhorn, Christopher Mehring, Edmond Mehring and Maureen Curran.

I have set forth below a detail of the work we performed on your behalf and some of the serious concerns and issues

we have repeatedly expressed to you and that we continue to have in connection with this matter. We confirm that we have completed our work for you and we will no longer represent you as your attorneys. You should consider whether you wish to continue your estate and elder law planning and, if so, you should retain a new firm to represent you on these matters.

In this letter, on August 30, 2002, Ms. Hegler noted that "fifty percent (50%) of your entire remaining estate will pass to Kathryn Einhorn, thirty percent (30%) will pass to your nephew Christopher Mehring and ten percent (10%) will pass to each of your niece Maureen Curran and your nephew Edmond P. Mehring."

This letter also reviewed the alleged "misappropriation" of the $443,000, and Ms. Hegler's recommendation that the decedent take civil and criminal action against Howard Einhorn and Montauk Financial. The decedent refused to do so. The Court notes that on August 27, 2002, Howard Einhorn wrote to Ms. Hegler taking issue with the "false characterizations" of misconduct. (Ex. AJ).

However, Ms. Hegler subsequently apparently reconsidered and again became Claire's attorney. She prepared a new will for her and the relevant change of beneficiaries forms, one of which is at the center of this proceeding. In order to conform to Claire's wishes, the Estate was made the beneficiary under the policy here at issue.

Also in evidence is a letter from Claire to "Maureen, Chris and Ed" (Ex. 7), in which she stated, in part, as follows:

Dear Maureen, Chris and Ed,

This is the final word on the transfer of some of my assets to each of you.

Refer to my attorney's letter of June, 20th 2002. My attorney, Jean Hegler

has verified that "all transfers have been properly made to your accounts in accordance to my instructions in my letter of authorization".

I have reviewed and approved all the paperwork relating to these accounts. As you know Kathy has complete "Power of Attorney" over all my affairs. I am very happy and pleased with everything she has done.

Howie has been my broker (and Marie's) for more than 20 years. I have complete trust in him.

Finally, Ms. Hegler testified that she "didn't believe she witnessed the decedent signing the change of beneficiary form. She doesn't think so."

## B. *The case of Edmond Mehring and Maureen Curran*

Edmond Mehring ("Edmond") testified that his first contact with attorney Jean Hegler was when he received a letter in the fourth quarter of 2001, indicating that the assets of Claire Mehring would be distributed to the four siblings. This would be done before the end of 2001, with subsequent distribution in 2002. As there was no follow-up to the original letter, in April 2002 he called Ms. Hegler. She advised him that the accounts were set up at Montauk Financial. Not having received any contact from Montauk Financial he called them but could not obtain verification that there was an account set up for him. He then called Ms. Hegler five or six times but could not contact her.

Edmond then met with his Aunt Claire Mehring who was very ill. She told him that all the accounts were set up and securities and cash was transferred into the four accounts. He then received a letter from Ms. Hegler dated April 18, 2002 (Ex. A) advising him that the Hegler law firm has been directed to cease all work on Claire Mehring's matters, and advising

him to make all further communications directly with Kathryn Einhorn.

Several months went by and he received statements from Montauk Financial. Then Montauk Financial faxed a W9 and account setup form to him. Edmond testified that this was "totally fabricated", and that someone signed the W9 form in his name. He was concerned as to what was not reported to the government and he was worried about possible IRS problems.

Susan Brettman has been employed by Hartford Life Insurance Company ("Hartford") in the Claims Department since September 2000. She reviews claims against Hartford and can process such claims within five business days, if she receives the necessary paperwork. As to Swiss Re claims, they are sporadic. The decedent Claire Mehring, as a Swiss Re employee, had a basic life insurance policy, which was paid for by the employer. At her retirement, Claire Mehring had a life insurance benefit in the sum of $50,000.

The Hartford Life Insurance Proof of Death, Group Life Insurance for Claire Mehring was introduced in evidence (Ex. L). This informative form revealed that the decedent Claire Mehring was born on August 10, 1918; she was first employed by Swiss Re on May 1, 1951; she last worked for that firm on February 1, 1990; and she died on June 25, 2003. The proof of death was signed by Ann Marie Rocco of Swiss Re on September 5, 2003.

Also in evidence is a letter from the agent for Hartford, dated May 25, 1995 (Ex. M) indicating that as a retiree, effective July 1, 1995, Claire's insurance benefits had been reduced to the sum of $50,000. There is no question that the sum of $50,000 is at issue in this case.

During the testimony of Ms. Brettman, an important document came to light, and was introduced. It was a letter to Susan

Brettman from Ann Marie Rocco, the Benefits Administrator in the Human Resources Department of Swiss Re dated September 5, 2003. (Ex. N). Notably, the letter indicates that the $50,000 insurance policy is to be "split into equal shares." In its entirety the letter reads as follows:

Ms. Susan Brettman

The Hartford Life Claims

P.O. Box 2999

Hartford, CT 06104–2999

September 5, 2003

Dear Susan:

Enclosed please find the completed proof of death form, Death Certificate and Beneficiary form and retirement letter dated 5/25/95 relating to Claire Mehring, Swiss Re Retiree. I have also enclosed a W–9 form from one of the beneficiaries, Kathryn Einhorn.

The certified copy of the death certificate indicates that Claire passed away on 6/25/03.

The amount of the Group Term Life Insurance is $50,000. The beneficiaries are as follows: (*to be split into equal shares*)

| | |
|---|---|
| Kathryn Einhorn | Edmond Mehring |
| 30 Heekscher Dr. | 2 Highview Ave |
| Huntington Bay, N.Y. 11743 | Old Greenwich, CT 06870 |
| | |
| Christopher Mehring | Maureen Curran |
| 16 Aberdeen Lane | 7 Abbott Rd. |
| Huntington, N.Y. 11743 | Smithtown, N.Y. 11787 |

Please copy me in on any correspondence that is sent regarding this claim. If have any questions, feel free to contact me directly.

Sincerely,

Ann Marie Rocco

Benefits Administrator

(Ex. N). (Emphasis supplied)

Asked why she did not make the payments on this "split into equal shares" proof of death form, Ms. Brettman stated that she received a second designation, which was in the claim file when she reviewed it on September 17, 2003. Even though the second designation was undated and Ms. Brettman did not know when it was placed in the file, she decided to recognize the second undated designation (Ex. 3).

This second "Life Insurance Change Form", the undated form at issue in this case, is in evidence both as Exhibit "3" and Exhibit "O", in which the beneficiary is designated as "My Estate . . . 100%." Ms. Brettman decided to accept this second undated change of beneficiary form even though the company policy was to accept only a form which is dated. She testified that she accepted this undated form because she was given information by Swiss Re that this was the designated form. However, she also stated that she doesn't recall why she accepted this alleged later undated form. She doesn't even know when Hartford received this form. However, on September 17, 2003, she sent out a request for the Estate papers.

Leola Specht has been the Employee Benefit Manager of Swiss Re since 2003. She is the Swiss Re employee in charge of the life insurance policies. As a matter of policy, Swiss Re gave insurance policies to new employees and retirees. The original policy to Claire in the sum of $200,000 was reduced to $50,000 after her retirement. During the testimony of Ms. Specht there was some discussion with Erica Ozer Esq. the house counsel for Swiss Re as to whether certain handwritten notes were privileged. In any event, Ms. Specht was notified about Claire's death shortly after June 25, 2003. Ms. Specht received a letter from attorney Randy M. Stein dated July 3, 2003 (Ex. T), some eight days after

the decedent's death. In this letter, Stein stated that he represented the Estate of Claire A. Mehring. He requested information about any insurance policies or assets in the name of the decedent. Stein enclosed copies of the death certificate and Letters Testamentary.

In a letter dated July 17, 2003, Anne Marie Rocco, the Benefits Administrator of Swiss Re, wrote to attorney Stein, advising him that the Estate is entitled to a life insurance benefit in the amount of $50,000 (Ex. U). In addition, on that same date, July 17, 2003, Ms. Rocco sent another letter to attorney Stein (Ex. V). This letter states, in part:

> As a Retiree of Swiss Re Investors. Claire was a participant in our Group Term Life Insurance program. Our file indicates that the beneficiaries are as follows:
>
> Kathryn Mehring Einhorn
>
> Edmond Mehring
>
> Christopher Mehring
>
> Maureen Mehring Curran
>
> The above beneficiaries are entitled to a benefit in the amount of $50,000 (to be split into equal shares.)
>
> To process the claim, please have each beneficiary completed the enclosed Internal Revenue Service Form W–9 and return the form to me with the original copy of Claire's death certificate.
>
> If you have any questions, please do not hesitate to reach me at 914–828–8651.

However, Ms. Specht testified that this "equal shares" disposition of the insurance policy was revised as of August 8, 2003. Apparently, at that time it came to the attention of the Swiss Re personnel that a different beneficiary form was found. According to Ann Marie Rocco, on this new beneficiary form, Claire stated that "my Estate" should be the beneficiary. In this regard, Ms. Specht indicated that Hartford, rather than Swiss Re would make the final decision as to the proper beneficiary. As she stated, "This case went on for so long—we threw up our hands and left it up to Hartford."

Also, Patricia A. Mulligan, the Swiss Re Manager of the Pension/Savings Plan wrote to attorney Stein on July 18, 2003, with regard to the assets due to Claire's Estate (Ex. X). While no mention was expressly made of the life insurance policy at issue, the letter did enclose "four (4) distribution forms" for "each of Ms. Mehring's beneficiaries." She was apparently referring to the original beneficiary form dated December 12, 1991, (Ex. Y) in which the life insurance proceeds were to be divided equally between the four nieces and nephews.

When Ms. Specht eventually found the second beneficiary form (Ex. 3) about a month later, she "got confused". She looked to Hartford to help Swiss Re figure out which was the correct beneficiary form. She was shown the September 5, 2003 letter from Ann Marie Rocco to Susan Brettman at Hartford, (Ex. N and Ex. AA), which stated that the Policy should be "split into equal shares" among the four nieces and nephews. This letter also corresponded to the same beneficiary distribution as set forth in the Rocco July 17, 2003 letter to attorney Stein (Ex. V). Ms. Specht periodically discussed this "beneficiary problem" with Hartford, who decided to engage a handwriting expert. The handwriting expert determined that the signature on the later beneficiary form, sent in to Swiss Re by Ms. Hegler on January 10, 2003 naming "My Estate", was that of the decedent, Claire A. Mehring.

Significantly, Ms. Specht testified that Swiss Re did receive the January 10, 2003 letter from Ms. Hegler, containing the latest change of beneficiary naming "My Estate". (Ex. 1 and Ex. AC). However, she

could not verify when Swiss Re received this key letter. In fact, Ms. Specht testified that there were two Hegler January 10, 2003 transmittal letters in the Swiss Re file. Ms. Specht testified that the first beneficiary form was dated December 4, 2001. Strangely, she can't say which form was received "first or when".

Of importance to the material issue in this case, is another change of beneficiary form, that was mailed to Swiss Re on December 21, 2001 (Ex. 5), a "Beneficiary Information Life Insurance Change Form" which was sent to Swiss Re. The letter accompanying the form reads as follows:

December 21, 2001

*VIA FIRST CLASS MAIL*

Swiss Re–America

175 King Street

Armonk, N.Y. 10504

RE: *Claire A. Mehring Life Insurance*

Dear Sir or Madam:

We are the attorneys for Claire A. Mehring in connection with the above referenced matter. I have enclosed for your review and records a Beneficiary Information Life Insurance Change Form and an Employee Pension Plan Participant's Beneficiary Designation executed by Ms. Mehring. Please adjust your records in accordance with Ms. Mehring's wishes.

Thank you for you attention to this matter. If you have any questions, please call me.

Very truly yours,

Joseph S. Vona

JSV:kd

Enclosures

(Ex. 5).

Enclosed in the December 21, 2001 letter from attorney Vona was a "Beneficiary Information Life Insurance Change Form" (Ex. 6), which conforms to the terms of the later beneficiary designation and, in its entirety, reads as follows:

Beneficiary Information

Life Insurance Change Form

| Employee name | Soc. Sec. No. | | |
|---|---|---|---|
| Claire A. Mehring | | | |

I designate the following Beneficiary(ies) to receive the proceeds of my Group Term Life Insurance and Group Accidental Death and Disbarment insurance

| Beneficiary Name | Relationship | Percentage of proceeds | |
|---|---|---|---|
| Kathryn Einhorn | Niece | 50% | CAM |

| Street Address | City | State | Zip |
|---|---|---|---|
| 30 Heckscher Drive | Huntington | NY | 11743 |

| Beneficiary Name | Relationship | Percentage of proceeds | |
|---|---|---|---|
| Christopher T. Mehring | Nephew | 30% | CAM |

| Street Address | City | State | Zip |
|---|---|---|---|
| 16 Aberdeen Drive | Huntington | NY | 11743 |

| Beneficiary Name | Relationship | Percentage of proceeds | |
|---|---|---|---|
| Maureen Curran | Niece | 10% | CAM |

| Street Address | City | State | Zip |
|---|---|---|---|
| 7 Abbot Road | Smithtown | NY | 11787 |

| Beneficiary Name | Relationship | Percentage of proceeds | |
|---|---|---|---|
| Edmond P. Mehring | Nephew | 10% | CAM |

| Street Address | City | State | Zip |
|---|---|---|---|
| 2 Highview Avenue | Old Greenwich | CT | 06870 |

| Contingent Beneficiary (For additional contingent beneficiaries please designate in the additional information mentioned below.) | | |
|---|---|---|
| Beneficiary Name | Relationship | Percentage of proceeds |
| | | |

| Street Address | City | State | Zip |
|---|---|---|---|

**Claire A. Mehring**

**Employee Signature**

The Court notes that each percentage designation is hand written and initialed by the decedent. It is also noted that the "My Estate" change of beneficiary (Ex. 3 and Ex. 3D), although undated, was date stamped at the top of the document, "09/10/2003 03:21P".

Ms. Specht testified that she is not sure of the date Swiss Re received the latest change of beneficiary form. She sent the latest undated change of beneficiary (Ex. 3 and Ex. AD) to Hartford "to be processed with the other change of beneficiary form." Her best opinion and recollection is that Swiss Re *did* receive the latest change of beneficiary form. She found the original latest change of beneficiary form "in a pile of unfiled things in September 2003 and sent it to Hartford." This was confirmed by a letter from Ann Marie Rocco of Swiss Re to attorney Stein dated September 16, 2003, (Ex. AE), which provided:

September 16, 2003

Dear Mr. Stein:

We received your recent letter dated September 10, 2003.

*Please be advised that we received Mr. Vona's original letter dated January 10, 2003 and we have corrected our records to indicate the proper beneficiary as the estate.* On September 10, 2003, I forwarded all the necessary information to Hartford Life to begin processing Claire's life insurance claim.

If you have any questions regarding the status of the claim, please call Ms. Susan Brettman at Hartford Life. Her phone number is 860–843–4544.

If you have any questions for me, feel free to contact me.

Sincerely,

Ann Marie Rocco

Benefits Administrator

cc: Kathryn Einhorn
cc: Edmond Mehring
cc: Christopher Mehring
cc: Maureen Curran

(Ex. AE) (emphasis supplied).

The Court finds that whatever confusion occurred at Swiss Re and Hartford as to the proper beneficiaries and the receipt of the latest change of beneficiary form, this Exhibit AE letter from Swiss Re resolves this issue. The letter, dated September 16, 2003, sent after all the prior letters and forms, clearly states that Swiss Re received the latest change of beneficiary by Claire to "My Estate . . . 100%" and forwarded this document to Hartford.

Natalie Green is a Hartford manager in the Group Life Department. Previously, she was a team leader in the Group Life Claims Unit. Ms. Green only handles group life insurance policies. As stated above, the decedent's latest change of beneficiary form was undated. She testified that it was received from Swiss Re and

was thereafter processed on September 10, 2003.

On September 5, 2003, Ann Marie Rocco of Swiss Re wrote to Susan Brettman at Hartford enclosing a death certificate and a beneficiary form. The letter advised Hartford that the $50,000 policy was to be divided into equal shares between the four beneficiaries. (Ex. AQ). It was the procedure for Hartford not to contact the beneficiaries and to leave that obligation to Swiss Re, the employer. However, a review of the file revealed two beneficiary forms. The first form was dated December 12, 1991, naming the four beneficiaries in equal shares. The second form was undated and named "My Estate" as the decedent's beneficiary. According to Ms. Green, this second beneficiary form was received by Hartford on September 10, 2003. This may explain the prior letters stating "equal shares" even after the second beneficiary form was sent to Swiss Re by Ms. Hegler on January 10, 2003. According to Ms. Green, apparently, Hartford received the two beneficiary forms on the same date, one by letter and the undated one by fax on September 10, 2003.

In a twelve page fax sent by Ann Marie Rocco to Susan Brettman of Hartford on September 10, 2003 (Ex. AS) a number of documents were transmitted to the carrier. The transmittal letter to Hartford from Ms. Rocco, reads as follows:

From

AnnMarie Rocco

Benefits Administrator

09/10/2003    03:14 PM

    To:    susan.brettman@hartfordlife. com

    cc:

    Subject:    Claire    Mehring SS# XXX–XX–XXXX[redacted by publisher]

Hi Susan,

As we discussed, I am sending you some information regarding Claire Mehring's Life claim. We have 2 copies of beneficiaries forms. One is dated 12/21/91 and the other was sent in January 2003 but was never dated.

Please let me the status of this claim once you receive the hardcopies in the mail.

Thanks!

Ann Marie

It is interesting to note that this fax by the Swiss Re representative confirms that the second undated beneficiary form, at issue in this case, was sent to Swiss Re by attorney Hegler in January 2003. The fax included the transmittal letter of Joseph S. Vona, Esq., enclosing a copy of the undated to "My Estate" beneficiary form, and the change of beneficiary form itself.

Ms. Green testified that this was the first time she saw the "new undated change of beneficiary form." As the prior testimony revealed, this form was transmitted by attorney Hegler's office to Swiss Re on January 10, 2003, which letter was included in the fax transmission. However, significantly, she acknowledged that the attorney Stein letter of September 10, 2003, which was also included in the fax, stated that, "this supercedes the beneficiary form on file from 1991." Ms. Green stated that she could not find the original of the first beneficiary designation, but she could use a copy to process the claim. However, she did receive the original of the second beneficiary designation.

In her testimony, Ms. Green stated that no decision was made as to the undated change of beneficiary form, "even though Susan Brettman seems to have accepted it." Ms. Green became involved on September 23, 2003, when she received a phone call from Ms. Maureen Curran, who felt that fraud was involved.

Ms. Green testified that there was a handwriting analysis of this document at issue. Ms. Rocco of Swiss Re forwarded the documents to be analyzed. As stated above, the handwriting analysis indicated that the decedent, Claire A. Mehring did sign the second, undated beneficiary form, at issue in this case. Because the claim for benefits was being contested by at least two of the beneficiaries, namely Edmond and Maureen, Ms. Green advised all four siblings by letter that, in the absence of an agreement, Hartford would attempt to deposit the money in court by way of an Interpleader action. (Ex. AV). The Court notes that in this letter to the beneficiaries, she also advised them of the validity of the Claire Mehring signature on the final beneficiary form:

> Based upon requests received previously, a handwriting analysis had been done and it was determined that the beneficiary designation indicating the estate to be the named beneficiary was in fact Claire Mehring's handwriting.

However, Ms. Green emphasized that she had no opinion as to the validity of the final beneficiary form and could not determine which beneficiary form was binding on the carrier.

Randy Stein is an attorney who represented Kathryn Einhorn. For a short time he also represented the decedent. Mr. Stein testified that Claire wanted to give inter vivos gifts to her nieces and nephews from her account at Montauk Financial. The decedent wanted the gifts to be given in the 50, 30, 10 and 10 percentages to her nieces and nephews. After Claire died, he represented Kathryn, who was the executrix of the estate.

When Mr. Stein found out about the second beneficiary form on July 3, 2003, he wrote to Swiss Re. Ms. Rocco responded to his letter on July 17, 2003, stating, "our file indicates that the Estate is entitled to a benefit in the amount of $50,000." (Ex. AZ). However, to add to the confusion, on that same date, July 17, 2003, Ms. Rocco wrote him another letter stating that the beneficiaries are the four siblings "split into equal shares". (Ex. BA). Following up on that latter assumption—namely equality—Mr. Stein sent a letter to the four heirs on August 12, 2003, stating that each will "receive an equal share." (Ex. BD).

Kathryn B. Einhorn testified, apparently under protest. It was obvious to the Court that she did not want to testify at this trial. The Court found Kathryn to be somewhat evasive in her testimony. In addition, her recollection was very dim on important matters. For example, she doesn't remember if she witnessed Claire signing the second beneficiary form. Kathryn testified that she had the power of attorney from Claire for some time in the past. She was Claire's sponsor at the nursing home and paid her bills from Claire's account. She stated that her husband Howard was Claire's broker "at one time," and he resigned. She testified that she "may have had an account with Montauk Financial." As to the $400,000 item discussed previously by other witnesses, Kathryn testified that the money was taken "in error and put back." The funds were mistakenly placed in the wrong account and it took time to correct this. She didn't know if any "fault" was determined with regard to the missing $400,000. However, she does recall that attorney Hegler repeatedly requested that the missing money be returned to Claire's account.

Another matter not recalled by Kathryn was the $87,000 that Claire gave her in December 2001. As set forth in a communication from Claire to Montauk Financial dated December 26, 2001 (Ex. P), it was stated:

2) Issue a check in the amount of $87,000 payable to "Kathryn Einhorn" and forward same to my niece at 30 Hecksher Drive, Huntington, New York 11743.

Kathryn testified that she did everything according to Claire's wishes. The Court finds that this statement was correct and Claire's wishes did guide the division of her assets in the unequal percentages ultimately determined by her. In this regard Kathryn testified that the decedent, at her death, had only one life insurance policy, the Hartford policy at issue in this case.

Kathryn acknowledged that, following Claire's death on June 25, 2003, there was some confusion over the beneficiaries of her $50,000 Swiss Re life insurance policy. For example, on August 12, 2003, Mr. Stein wrote to the beneficiaries advising that they will each receive an equal share (Ex. BV). Also on July 17, 2003 Ms. Rocco wrote two contradictory letters as to the beneficiaries. (See Ex. U and Ex. V). However, this confusion was alleviated by the Stein letter to Swiss Re dated September 10, 2003 (Ex. BU), indicating the Estate to be the proper beneficiary. This was followed by the letter from Ms. Rocco of Swiss Re to Mr. Stein dated September 16, 2003 (Ex. BT), in which she stated, "we have corrected our records to indicate the proper beneficiary as the estate."

Howard Einhorn, the husband of Kathryn Einhorn, was Claire's broker for about twenty years, with different brokerage firms. The Court found him to be an evasive and uncooperative witness. For example, when he was asked whether his wife received an $87,000 check from Claire, he responded, "Ask her." Claire had four joint accounts. Each one was with Kathryn and another sibling. In approximately March of 2002, Howard resigned as the decedent's broker. He retired from the First Montauk brokerage firm in 2004. He had heard that Maureen and Edmond were making "hundreds of phone calls" which were embarrassing to him and he wanted to "recuse himself from further involvement with the decedent and her accounts."

With regard to the alleged misuse of more than $400,000 by the Einhorns, there was introduced a letter from Ms. Hegler to Howard Einhorn dated September 16, 2002 (Ex. AK), in which the following was stated:

Upon our discovery that you omitted from your instructions to us approximately $400,000 in stocks and bonds, and that such assets were transferred to your wife Kathryn Einhorn without Ms. Mehring's knowledge, Ms. Mehring directed us to demand Montauk and Mrs. Einhorn to return the assets immediately. After approximately three months of requests and demands to bother you and Montauk we finally verified that all assets incorrectly transferred were returned to the Account. Ms. Mehring was not aware of and never authorized the excess transfers to Mrs. Einhorn.

At one time, in December 2001, it was estimated that Claire had $752,000 in her account; although at other times Howard estimated her net worth to be several hundred thousand dollars. Also, Howard testified that despite certain problems, eventually in 2002 there were no missing funds and all the instructions from Claire were carried out "to the fullest," namely, the funds were all placed in the correct accounts and all the proper distributions were made. He testified that all the decedent's assets were to be distributed in accordance with her new Will, including the proceeds of the insurance policy at issue.

## II. *DISCUSSION*

### A. *The Standards*

■ As stated in the Court's decision of June 29, 2007, *Hartford Life Ins. Co. v. Einhorn,* 497 F.Supp.2d 398 (E.D.N.Y. 2007), this dispute is governed by the Employee Retirement Income Security Act of 1975 ("ERISA"), 29 U.S.C. §§ 1001–1461. ERISA regulates employee benefit plans that "through the purchase of insurance" provides benefits in the event of death. 29 U.S.C. § 1002(1)(A). The statute is designed to ensure the proper administration of pension welfare employee benefit and insurance plans, both during the years of the employee's active service and in his or her retirement years. *See, Boggs v. Boggs,* 520 U.S. 833, 839, 117 S.Ct. 1754, 1760, 138 L.Ed.2d 45 (1997).

The Policy itself states that it is an employee welfare benefit plan that is subject to the provisions of ERISA. Thus, when the Court determines which defendant in the interpleader action is entitled to the proceeds of the Policy, Federal ERISA law rather than New York State law is applicable. *O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 113–14 (2d Cir.1995); *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 13–11 (2d Cir.1993).

### B. *The Findings*

The following facts in this case are not in dispute. The decedent, Claire A. Mehring, was a single woman who had four nieces and nephews, namely Kathryn Einhorn, Christopher Mehring, Edmond Mehring and Maureen Curran. The decedent was first employed by Swiss Re on May 1, 1951 and, last worked on February 1, 1990. The decedent, as an eligible employee of Swiss Re American Holding Corporation, was covered by a group life insurance policy issued by the plaintiff Hartford Life Insurance Company. The Policy afforded life insurance coverage to eligible employees of Swiss Re. After her retirement, the decedent became covered under the terms of the policy as a "retired employee". However, as a retired employee her benefits under the Policy were subject to certain yearly reductions. When she retired, the decedent's benefits were the sum of $200,000. As of July 1, 1999, her benefits were reduced to twenty-five percent of her benefits at the time of her retirement, or the sum of $50,000. Under the terms of the policy, this sum of $50,000 represented the minimum amount of her insurance benefits.

On June 25, 2003, Claire A. Mehring died. A dispute arose between the executrix of the decedent's estate and the pro se defendants regarding the proper distribution of the life insurance proceeds from the Hartford Policy. The pro se defendants, Edmond and Maureen, a niece and nephew of the decedent, claim to be entitled to their equal share of the insurance proceeds under the decedent's initially executed beneficiary designation form signed and dated December 12, 1991. This original designation states that each of the four nieces and nephews is to receive twenty-five percent of the Policy proceeds, namely the sum of $12, 500 to each beneficiary.

The Court credits the testimony of attorney Jean Hegler. In regard to her testimony, the Court finds that in October 2002 the decedent drew a second will in which the percentage to the beneficiaries would no longer be equal. The new percentages to the beneficiaries were as follows:

| | | |
|---|---|---|
| Kathryn Einhorn | – | 50% |
| Christopher Mehring | – | 30% |
| Edmond Mehring | – | 10% |
| Maureen Curran | – | 10% |

The Court further finds that attorney Hegler recommended a change in the beneficiaries of the Policy to make the Estate

the beneficiary. The decedent agreed with this proposed change. The change would effectively distribute the $50,000 proceeds of the policy in the unequal distribution set forth above. In furtherance of the change of beneficiary distribution in the Policy, Ms. Hegler took steps to effectuate the change of beneficiary. She contacted Swiss Re and obtained a change of beneficiary form; she completed the form with the newly designed beneficiaries being the decedent's Estate; she prepared two change of beneficiary forms, one for the Savings Plan (Ex. 2) and the other for the Policy (Ex. 3); in December 2002 or January 2003; and she mailed both forms to the decedent.

The Court further finds that Ms. Hegler received both forms from the decedent. Both forms were signed and both were undated. Ms. Hegler did not insert a date on the forms. Of significance, the Court notes that both forms were Swiss Re forms. The Savings Plan form (Ex. 2) has a place entitled "Participant's Signature" and, on the same line, a place for the date to be inserted. However, the Swiss Re form entitled "Beneficiary Information—Life Insurance Change Form" (Ex. 3) has no designated place or line for the insured's signature. More importantly, the form apparently has no designated line or place for the date to be inserted. Apparently, the decedent signed the form at an undesignated line just below the last line referring to the beneficiaries. Therefore, it is clear that a lay person signing this change of beneficiary form would not be alerted to the fact that a date should be inserted. There simply was no indication on this form that the person signing should also insert a date.

The Court further finds that, on January 10, 2003, an associate in Ms. Hegler's office, one Joseph S. Vona, Esq., mailed the undated change of beneficiary form to Swiss Re on January 10, 2003, with a covering letter, certified mail, return receipt requested. The letter stated in part, "Please adjust your records in accordance with Ms. Mehring's wishes." Introduced in evidence is a United States Postal Service Certified Mail Receipt (Ex. 4), indicating that the transmittal letter and the Change of Beneficiary form were received by Swiss Re in Garden City on January 13, 2003.

What happened to the Change of Beneficiary form after its receipt by Swiss Re is somewhat unclear. However, the Court finds that the decedent did her part. She executed a Swiss Re Change of Beneficiary form and sent it to her former employer, apparently in compliance with the procedure instructed by Swiss Re. The evidence is confusing as to what occurred after Swiss Re received the Change of Beneficiary form at issue in this case. One fact which is clear and undisputed is the decedent's desire, as far back as December 2001, to change the beneficiaries percentages to the 50–30–10–10 distribution. On December 21, 2001, by a letter from Ms. Hegler's associate Joseph S. Vona, Esq., he mailed a Change of Beneficiary form to Swiss Re (Ex. 5). This Change of Beneficiary form (Ex. 6), which preceded this final form, expressly set forth the designated beneficiaries and percentages, as of December 2001, as follows:

| | | |
|---|---|---|
| Kathryn Einhorn | – | 50% |
| Christopher Mehring | – | 30% |
| Edmond Mehring | – | 10% |
| Maureen Curran | – | 10% |

The Court notes that next to each percentage are the handwritten initials, CAM; obviously made by the decedent herself. The Court further notes that this Change of Beneficiary form has no place for a date and is undated. So that it is clear and the Court finds that as early as December 21, 2001, the decedent wanted the Policy pro-

ceeds to be given to her Estate, to be distributed in this unequal fashion.

However, again, what happened to the final Change of Beneficiary form, designated to "My Estate", is somewhat unclear. For example, there is in evidence a letter to Susan Brettman of Hartford dated September 5, 2003 (Ex. N) indicating that the proceeds are to be split into four equal shares. Ms. Brettman explains that she did not make the payments on this "split into equal shares" designation because she received a second undated designation "which was in the claim file when she reviewed it on September 17, 2003." Ms. Brettman decided to recognize the second undated form in which the beneficiary is designated as "My Estate ... 100%".

Also, contributing to this confusion is a letter dated July 17, 2003, from Anne Marie Rocco, the Swiss Re Benefits Administrator to attorney Randy Stein (Ex. V), indicating that the $50,000 is "to be split into equal shares." Strangely, on the same date, July 17, 2003, Ms. Rocco sent another letter to attorney Stein (Ex. U) advising him that the Estate is entitled to the life insurance benefits in the sum of $50,000.

Leola Specht, the Employee Benefit Manager, in charge of the life insurance policies, testified that the "equal shares" disposition, was recorded as of August 8, 2003. Apparently, at that same time, the different "My Estate" beneficiary form was finally found. Interestingly, Ms. Specht said she "got confused" and looked to Hartford to "figure out which was the correct beneficiary form." In response, Hartford retained a handwriting expert who determined that the signature on the "My Estate" form was that of the decedent.

In clarification of this somewhat muddled factual situation, Ms. Specht acknowledged that Swiss Re did receive the January 10, 2003 letter from the Hegler law firm enclosing the latest change of beneficiary, naming "My Estate".

The Court also finds that upon receipt of the latest change of beneficiaries form, at some time later, Swiss Re sent it to Hartford. This was confirmed by a letter from Ann Marie Rocco of Swiss Re to attorney Stein, dated September 16, 2003 (Ex. AE) which stated that Swiss Re received the Vona January 10, 2003 transmittal letter and corrected their record "to indicate the proper beneficiary as the estate." This letter further stated that on September 10, 2003, Ms. Rocco forwarded this "information" to Hartford Life. In the Court's view, this letter explains, at least in part, what led to the confusion stated above. Apparently, although Swiss Re received the latest "My Estate" Change of Beneficiary form on January 13, 2003, Swiss Re did not forward the form to Hartford until September 10, 2003, some eight months later. However, as stated above, whatever confusion occurred at Swiss Re and Hartford, the September 16, 2003 Swiss Re letter correcting their record "to indicate the proper beneficiary as the estate," resolved the issue.

### C. The Applicable Law as to an Undated Change of Beneficiary Form

When ERISA preempts the state laws but is itself silent on the relevant issue, federal courts have created a federal common law of rights and obligation with regard to ERISA regulated life insurance plans. *See, Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989); *Phoenix Mutual Life Insurance Co. v. Adams,* 30 F.3d 554, 564 (4th Cir.1994); *Krishna v. Colgate Palmolive Company,* 7 F.3d 11, 14 (2d Cir.1993) (citing *Amato v. Western Union Int'l Inc.,* 773 F.2d 1402, 1419 (2d Cir.1985)). In addition, the designation of

beneficiaries also relates to and is governed by ERISA law. *See, Life Insurance Co. of No. America v. Nears,* 926 F.Supp. 86 (W.D.La.1996).

■ The federal common law rules on issues such as the ones presented in this case, is referred to as the "substantial compliance" doctrine. As set forth in *Phoenix Mutual Life Insurance Co.,* the federal common law doctrine of "substantial compliance" is repeatedly explained in the pertinent cases, as follows:

> [P]ursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.

30 F.3d at 564.

In *Davis v. Combes,* 294 F.3d 931, 935 (7th Cir.2002) the named insured attempted to complete a change of beneficiary form in favor of her sister, Linda Davis. The effectiveness of that change of beneficiary form was at issue; especially in view of the fact that the decedent had previously named her husband for 20% and her daughter for 80%. With regard to the policy at issue, the decedent filled out—with her own handwriting—the form provided to her. On that form she provided all the necessary information, including her designation of Linda as the new beneficiary, and September 1, 1996 as the effective date. However, she did not sign and date the form on the line provided for that purpose. This failure to sign and date the form on the line provided appeared to be a technical violation of both the sponsor and the insurance carrier requirements. In fact, the policy provided that a beneficiary

designation "will be effective on the date the insured signs it." Ruling that "substance rather than form should be the basis of . . . [such] decisions", the Seventh Circuit ruled that "We see no reason not to apply the substantial compliance notion to this issue . . ." *Id.* at 941.

The Court in *Davis* cited to an extreme case which vividly demonstrated that intent was an important factor in these substantial compliance decisions. In *Criscuolo v. United States,* 239 F.2d 280 (7th Cir.1956), a dying soldier in the hospital gave a staff person a note indicating that he wanted to change his beneficiary to make his wife the beneficiary of his policy. The staff person obtained and completed a change of beneficiary form; but the soldier died before he was able to sign or submit the form. The Court found that, although mere intent is not enough, in this unique case, the intent, desire and purpose of the soldier should be given effect by the Courts. Again, the Court ruled that "substance, rather than form should be the basis of . . . [such] decisions."

Other language in *Davis* is particularly appropriate.

> The fact that a policy holder made a careless error should not conclusively determine whether her efforts at naming a beneficiary were effective for purposes of the policy and the statute. Carelessness suggests a lack of attention to detail, but it tells us very little about whether the policy holder formed the necessary intent to name a beneficiary and whether she took sufficient steps consistent with that intent to implement her decision. We are aware that there will be situations in which a failure to sign and date a beneficiary designation may cast significant doubt on whether the policy holder actually decided to go through with the change. But it is equally true that there are other cases

in which the evidence will unequivocally establish that the policy holder intended to make the new beneficiary designation and took positive action to effectuate that intent. *Cf. Becker v. Montgomery*, 532 U.S. 757, 121 S.Ct. 1801, 1808, 149 L.Ed.2d 983 (2001) (holding that failure to sign notice of appeal should not be fatal where "no genuine doubt exists about who is appealing, from what judgment, to which appellate court").

*Id.* at 942.

An example of the lack of "substantial compliance" is set forth in *Prudential Insurance Company of America v. Schmid*, 337 F.Supp.2d 325, 330 (D.Mass.2004). In *Schmid* the intended beneficiary presented the following evidence of a "substantial compliance" with regard to a beneficiary change. The decedent requested a change of beneficiary form from the carrier as well as information with respect to the named beneficiary. The potential new beneficiary—the second wife—contended that she heard the decedent say, on the phone to the carrier, that he intended to make her the beneficiary. The decedent did receive correspondence from the carrier which erroneously identified Patricia, the second wife as the present beneficiary. In fact, the beneficiary was Jessica, his daughter from his first marriage. The correspondence from the carrier also included a change of beneficiary form with instructions on how to effect the change. However, the decedent died without sending in the change of beneficiary form. Patricia, the second wife and the intended beneficiary, asserted that the decedent intended to change the beneficiary from daughter Jessica to her and was only prevented from doing so by the carrier's error in mistakenly advising him that Patricia was already the designated beneficiary. However, at the decedent's death, daughter Jessica remained the listed beneficiary.

In *Schmid* the Court reviewed the applicable ERISA and federal common law, including the primary substantial compliance rule involving (1) intent and (2) the attempt to effectuate change by undertaking positive action. The Court ruled that the first element of substantial compliance; namely, the intent to make a change, was satisfied. However, the Court determined that there was insufficient evidence as to the second factor for substantial compliance, in that there were no positive steps made to effectuate the change.

■ Here, in this case, not only was there proof of intent and a will to substantiate it, but there were positive steps taken by the decedent to effectuate the change. Everything that could have been done by Claire to make her estate the beneficiary of the policy was done—except the insertion of the date on the change form. In the Court's view, in this case, there was a classic substantial compliance with the effort to change her beneficiary to the one entity that would carry out her wishes. In accordance with Claire's clear and express wishes, her estate assets, including this policy, would be divided in the unequal manner set forth in her will. Claire did not have to go to the length of particularizing the percentages in the change of beneficiary form. By giving the money to the Estate, the particular division among the nieces and nephews would be made for her.

In *Schmid* the Court cited to similar cases where the decedent did not take enough positive steps to effectuate a change. In *American International Life Assurance Co. of New York v. Vazquez*, No. 02 Civ. 141(HB) 2003 WL 548738 (S.D.N.Y. Feb. 25, 2003), the decedent did nothing except express an intent to make an unspecific change and to obtain a change of beneficiary form. In *Aetna Life Ins. Co. v. Weatherford*, 924 F.2d 1057 (6th

Cir.1991), the decedent completed and signed a change of beneficiary form but never mailed it. The completion of the form was held to be merely an "unexecuted intention" and did not meet the standard of substantial compliance.

In this case it is clear that the decedent had the intent to change the beneficiary to "My Estate ... 100%", and did all the positive acts required to accomplish that intent. In the Court's view she succeeded in changing the beneficiary of the Hartford policy to "My Estate," and her accomplished intent will be fulfilled.

### III. CONCLUSIONS OF LAW

Reading the express language of the Policy, a change of beneficiary must be done in writing on a form satisfactory to Hartford. The change of beneficiary form must be filed with the employer prior to the death of the insured. Further, according to the terms of the Policy, change of beneficiary designations become effective on the date the insured "signed and dated the form". In this case, the Court finds that the change of beneficiary form at issue in this case (Ex. 3), (1) was done in writing; (2) was signed by Claire Mehring; (3) on a form satisfactory to Hartford; and (4) the form was filed with the Swiss Re employer prior to Claire's death. The only element missing from the Policy requirements was that the change of beneficiary form was not dated.

In this case, there is no doubt that Claire Mehring intended that the proceeds of the insurance policy be given to her estate, to be subsequently divided in the unequal proportions set forth in her will. She signed the Change of Beneficiary document and sent it to her lawyer to be transmitted to her employer. Although it was not dated, the form contained no place for a date nor did it state on the form that a date should be inserted. Thus, with reasonable certainty, to a lay person, her signature would be sufficient. The Court finds that it was sufficient.

Accordingly, the Court rules that the undated change of beneficiary to the Hartford policy signed by the decedent Claire A. Mehring designating "My Estate" as the beneficiary, was in substantial compliance with the Policy and the legal requirements and constitutes a valid change of beneficiary.

Therefore, the Clerk of the Court is directed to transfer the sum of $50,000 plus accrued interest to Kathryn Einhorn, the Executrix of the Estate of Claire A. Mehring, Deceased, to be distributed in accordance with the provisions of the decedent's will. In response to the contentions of Edmond Mehring and Maureen Curran, ultimately, the proceeds of the insurance policy payable to the Estate, will be divided, as set forth in the decedent's will, as follows:

| | | |
|---|---|---|
| Kathryn Einhorn | – | 50% plus accrued interest |
| Christopher Mehring | – | 30% plus accrued interest |
| Edmond Mehring | – | 10% plus accrued interest |
| Maureen Curran | – | 10% plus accrued interest |

Upon the distribution of the sum of $50,000 plus accrued interest to Kathryn Einhorn, as the Executrix of the Estate of Claire A. Mehring, Deceased, the Clerk is directed to close this case.

**SO ORDERED.**